KIRBY *v.* YOUNG.

Opinion delivered October 25, 1920.

1. FRAUD—MISREPRESENTATIONS.—Where misrepresentations in the sale of a farm as to the condition of an engine on the farm were made in connection with an offer that was not accepted, but ne-

gotiations between the parties continued, resulting in the sale of a portion of the land with the engine, the negotiations were all parts of the same transaction, and the misrepresentations must be attributed to the final contract, and not to the offer which was refused.

2. FRAUD—EXECUTED CONTRACT—WAIVER.—The execution of a note for the balance of the purchase money of land and the acceptance of a deed after discovery of falsity in the vendors' representations as to an engine on the land did not constitute a waiver of the misrepresentations where the contract had been partly executed by payment of a portion of the purchase money and by taking possession.

3. MORTGAGES—ASSUMPTION OF INTEREST.—The acceptance of a deed to land which stated that the grantee agreed to assume the incumbrances on the land is a binding contract to pay interest as well as principal of the incumbrances, even though the contract for the purchase obligated him to pay the principal only.

4. APPEAL AND ERROR—SUPERSEDEAS BOND—JUDGMENT.—On appeal from a decree enforcing foreclosure of a mortgage on land, and rendering a personal decree against appellant, where he had executed a supersedeas bond superseding the whole of the decree, on affirmance judgment will be entered against the sureties on the supersedeas bond for the amount of money recovered, without waiting for the foreclosure decree to be enforced by sale of the property; if the appellant desired to stay only the part of the decree relating to the foreclosure, the terms of his bond should have been varied to that effect. ·

Appeal from Lonoke Chancery Court; *John E. Martineau,* Chancellor; reversed in part.

*Will G. Akers,* for appellant.

1.   The finding of the chancellor that no misrepresentations were made as to the condition of the oil engine is contrary to the clear preponderance of the testimony, and Kirby had the right to offset against the note for $3,000 the sums he had been damaged by reason of appellee Young's misrepresentations as to the condition of the oil engine, and (2) that under his agreement with Young and Birdsong he had assumed to pay only so much of the two incumbrances as were specifically set out in the said agreement, which expressly provided that he should in no event pay or assume to pay any sum or amount for the land in excess of $38,000. The chancellor erred in over-

ruling the contentions of Kirby, and therein erred in foreclosing the lien of the $3,000 note and the lien securing the McBride indebtedness.

2.   Under the terms of the contract appellant only assumed the payment of the principal sum of the mortgages, and it was error to find that he assumed and agreed to pay the interest upon the notes held by W. T. McBride and to render judgment against him for the past due interest on said notes.   Kirby should be credited with the damages sustained by reason of the false representations of appellees, and a decree rendered only for the principal notes of the two incumbrances referred to in the contract and appellees should pay the interest notes.

*T. E. Helm,* for appellee, McBride.

The decree, in so far as it applies to appellee McBride, is correct and should be affirmed, as no error is pointed out.

*Trimble & Trimble,* for appellees.

1.   Appellant was not entitled to setoff against the $3,000 note the damages sustained by reason of misrepresentations as to the condition of the oil engine, and it was not the intention and purpose of the agreement entered into by the parties on January 14, 1919, that Doctor Kirby should pay and assume the principal and *interest* notes due on the McBride insurance company mortgages. All prior negotiations leading up to a written contract are merged therein; the evidence of a contemporaneous oral agreement is not competent to vary the terms of a written agreement.   196 S. W. 800; 197 *Id.* 11.

2.   The notes naturally bear interest, and it was clearly the intention of the parties that interest on the notes should be paid under the recitals in the deed, the acceptance of the deed and the agreement to pay the mortgage constitutes a binding contract and obligation to pay the notes, including interest.   110 Ark. 70..   The findings are correct.

HUMPHREYS, J.   This suit was commenced by appellees, M. G. Young and A. W. Birdsong, against appel-

lants in the Lonoke Chancery Court, to foreclose a mortgage for $3,000 on a tract of land containing 627.23 acres in Lonoke. County, Arkansas, sold by appellees, M. G. Young and A. W. Birdsong, to appellant, H. H. Kirby. Appellee W. T. McBride was the beneficiary, and appellee W. E. Lenon the trustee in a prior mortgage for $15,000 on a tract of land consisting of 707.23 acres, which tract included the 627.23 acres, the latter mortgage having been executed by appellees M. G. Young and A. W. Birdsong and their wives to W. E. Lenon in trust for W. T. McBride before they sold the 627.23 acre tract to H. H. Kirby. Before selling the land to H. H. Kirby, appellees, M. G. Young and A. W. Birdsong, had also executed a mortgage on the entire tract to the Missouri Life Insurance Company for $10,000. The Missouri Life Insurance Company was not made a party to the suit.

W. E. Lenon, as trustee, filed a formal answer, setting up that his only interest was that of trustee, and requesting that no judgment go against him. Appellee W. T. McBride filed an answer and cross-bill, seeking to foreclose the $15,000 mortgage on the entire tract, in which he alleged that appellant H. H. Kirby had assumed the mortgage, with interest thereon, as a part of the consideration in his purchase of the 627.23 acre tract of land from appellees, M. G. Young and A. W. Birdsong. The issues presented by the pleadings, as finally made up, presented the questions, first, whether H. H. Kirby was entitled to a counterclaim of $2,051.45 on account of necessary repairs placed upon an 80-horse-power Giant oil engine installed upon the farm, which had been represented to him as being in good condition at the time of the sale of said lands and engine to him; and, second, whether H. H. Kirby had assumed and was responsible for the interest coupon notes on the $10,000 and $15,000 mortgages.

The cause was submitted to the court upon the pleadings, exhibits thereto and the evidence adduced by the several parties, which resulted in the rendition of a judgment against H. H. Kirby, M. G. Young and A. W.

Birdsong in favor of W. T. McBride for $14,472.63, for debt and interest, with interest thereon from the date of the judgment at the rate of 10% per annum until paid, for which amount a lien was declared on the entire 707.23 acre tract; and a judgment against H. H. Kirby in favor of appellees, M. G. Young and A. W. Birdsong for $3,217.33, debt and interest, with interest thereon from the date of the judgment at the rate of 8% per annum until paid, for which amount a lien was declared on the 627.23 acre tract; and a decree of foreclosure and sale of the lands for the satisfaction of the amounts aforesaid.

From the judgments and decree of foreclosure, appellant prosecuted an appeal to this court.

The facts reflected by the record are, in substance, as follows: In the fall of 1918, M. G. Young and A. W. Birdsong offered to sell Dr. H. H. Kirby 707.23 acres of rice land in Lonoke County, Arkansas, for $40,000. The offer was declined. Negotiations followed, which resulted in a written contract of sale and purchase of 627.23 acres of said tract, particularly describing it, with appurtenances and improvements thereon, for $38,000 on January 14, 1919. The contract provided for an abstract of title showing the legal title in M. G. Young and A. W. Birdsong, subject to a mortgage of $10,000 in favor of Missouri Life Insurance Company, and a mortgage of $15,000 in favor of W. E. Lenon, as trustee for W. T. McBride; for the payment of $1,000 in cash upon delivery of the abstract, $9,000 in cash upon the execution of note by H. H. Kirby for $3,000 for part purchase price, bearing interest at 8% per annum, payable January 1, 1920, and the execution of the deed for said land from M. G. Young and A. W. Birdsong; for the assumption and payment by H. H. Kirby of the $10,000 and $15,000 mortgages aforesaid, with the proviso that "in no event is H. H. Kirby to pay or assume any sum or amount for said land in excess of $38,000, as follows: $2,000 due on or before January 1, 1920; $2,500 due on or before January 1, 1921; $2,500 due on or before January 1, 1922; $2,500 due on or before January 1, 1923; $2,500 due on or before January 1, 1924;

$3,000 due on or before January 1, 1925; total $15,000. And the following due and payable the Missouri Life Insurance Company: $1,500 due on or before January 1, 1920; $1,500 due on or before January 1, 1921; $1,500 due on or before January 1, 1922; $5,500 due on or before January 1, 1923; total $10,000." The interest of about $7,000 on the deferred payments in the two mortgages was evidenced by separate notes falling due annually, just as the notes evidencing the principal sums, with a proviso in the mortgages securing the indebtedness to the effect that, upon failure to pay installments of interest when due, the whole indebtedness should become due. When the $3,000 note became due, appellant refused to pay it unless allowed $2,051.45 as a credit for damages sustained on account of defects in the engine; also refused to pay the interest coupon notes on the mortgages assumed as a part of the consideration for the sale, contending that he had only assumed the payment of the principal and not the interest. Prior to the execution of the note and deed, upon request of H. H. Kirby, Young and Birdsong furnished him a bill of sale of said engine which contained no express guaranty or warranty.

On or about the 4th day of April, following, M. G. Young and A. W. Birdsong, with their wives, delivered H. H. Kirby a deed for the 627.23 acre tract, in which the following recital appears: "For and in consideration of the sum of $38,000 paid and to be paid by H. H. Kirby, as follows, towit: $10,000 cash in hand paid, the receipt of which is hereby acknowledged, promissory note for the sum of $3,000, due and payable January 1, 1920, with interest from January 14, 1919, until paid, at the rate of 8% per annum, and other encumbrances upon the within described lands, in the sum of $25,000 which are to be assumed and paid by the said H. H. Kirby," which deed was accepted and duly entered of record by the said H. H. Kirby.

Upon the issue of whether misrepresentations of the condition of the 80-horse-power Giant oil engine were made and were inducements to the contract for the pur-

chase of the rice farm, Dr. H. H. Kirby testified that M. G. Young offered to sell him, in November, 1918, the 707.23 acre tract for $40,000, which he refused, after which he offered to sell him the 627.23 acres of said land for $38,000; that the negotiations continued until the 14th day of January, 1919, at which time he entered into a written contract with M. G. Young and A. W. Birdsong for the purchase of the latter tract; that, during the negotiations at Stuttgart, in the presence of Judge Manning and Nathan H. Way, M. G. Young represented that the 80-horse-power Giant oil engine was in good condition; that the representation was an inducement leading him to purchase the land; that he afterward discovered and informed Mr. Young of the amount necessary to remedy certain defects in the engine, which he promised to pay; and also informed him if he discovered other defects in it he would submit the account for repairs to him for payment. Mr. Young testified that the first offer of the whole tract for $40,000 was declined by Dr. Kirby; that the second offer of smaller acreage for $38,000 was a later and independent transaction; that no representation was made by him as to the condition of the engine during the negotiations leading up to the contract for the sale and purchase of the farm; that the representation referred to by Dr. Kirby, as being made at Stuttgart, related to the first offer, which was declined, and had no connection with the negotiations resulting in the contract for the sale and purchase of the plantation.

Nathan H. Way testified that, in a conversation at Stuttgart, during the negotiations which terminated in the contract for the sale of the plantation by Messrs. Young and Birdsong to Dr. Kirby, Mr. Young stated that the oil engine was in good shape.

The undisputed evidence showed that the oil engine was in a defective condition; that futile attempts were made to repair it; that, during the time it was run, the cost of repairs and waste of oil amounted to $951.45; that the defects could only be remedied by the replace-

ment of the piston and cylinder by new ones at an expense of $1,100.

It is fairly inferable from the testimony that Dr. Kirby was apprised of the defective condition of the engine before the note and deed were delivered to him.

Appellants contend that the finding of the chancery court to the effect that no misrepresentation was made as to the condition of the oil engine is contrary to the weight of the evidence. After a careful reading of the evidence, we are convinced that the negotiations began and continued until a written contract for the sale and purchase of the plantation was entered into between the parties. We are unable to draw a conclusion from the evidence, even if the negotiations were in the nature of an offer refused and later a counter-offer accepted, that they were separate and independent transactions. The transaction was between the same parties, concerning the same subject-matter, covering a short period of time, all of which tends to sustain the direct and positive evidence of Dr. Kirby and Nathan H. Way that the written contract for the sale and purchase of the plantation was the result of negotiations begun and continued until its consummation. This being true, the representation as to the condition of the engine at any time during the negotiations must be attributed to the final contract, and not to the offer which was refused. The finding and decree of the court in this regard was contrary to the weight of the evidence. Appellee contends, however, that the execution of the note for the balance of the purchase money and the acceptance of the deed for the land, after discovery of the defective condition of the engine, was a waiver of the misrepresentation. This would be so if the contract had been entirely executory. The contract, however, had been executed in part before discovery of the defective condition of the engine. Before receiving such information, Doctor Kirby had paid $1,000 in cash and entered into possession of the property. *Whitney* v. *Allaire,* 1 N. Y. 305; *Johnson* v. *Culver,* 116 Ind. 278; *Nauman* v. *Oberle,* 90 Mo. 666; *Haven* v. *Neal,*

43 Minn. 315; *Thompson* v. *Libby*, 36 Minn. 287; *McDonough* v. *Williams*, 77 Ark. 261..

Appellants last contention is that, under the terms of the contract, he only assumed the payment of the principal sums of the $10,000 and $15,000 mortgages, and that it was error to find that he assumed and agreed to pay the interest coupon notes held by W. T. McBride, and to render judgment against him for the past due interest evidenced by them. It is unnecessary to construe the meaning of the language used in the contract in relation to the assumption of the mortgages, as the acceptance of the deed on April 4, 1919, containing the recital that appellant H. H. Kirby agreed to assume and pay as a part of the consideration for the land the encumbrances of $25,000 on them constituted a binding contract upon him. *Felker* v. *Rice*, 110 Ark. 70.

The judgment and decree of foreclosure in favor of appellee W. T. McBride is affirmed; and the judgment and decree of foreclosure in favor of appellees, M. G. Young and A. W. Birdsong, is reversed and remanded with directions to allow appellant $2,051.45 as a credit on the $3,000 note resulting from the defective condition of the engine, and for further proceedings not inconsistent with this opinion.

OPINION ON MOTION TO RENDER JUDGMENT ON SUPERSEDEAS BOND.

McCULLOCH, C. J. Appellee, W. T. McBride, moves now for judgment against the sureties on appellant's supersedeas bond. The sureties appear and resist the motion on the ground that the decree appealed from was for the foreclosure of the mortgage on land, as well as for the recovery of money, and that no judgment could be rendered against the sureties until the foreclosure decree is enforced by a sale of the property. Appellant assumed payment of the mortgage debt to McBride as a part of the consideration of his purchase of the land from appellees Young and Birdsong, and the chancery court rendered a personal decree against them for the amount

of the McBride debt, as well as for a foreclosure of the mortgage. That was in accordance with the statute, which provides that "in an action on a mortgage or lien a judgment may be rendered for the sale of the property and for the recovery of the debt against the defendant personally." (Crawford & Moses' Digest, § 6242.)

The supersedeas bond was in statutory form (Crawford & Moses' Digest, § 2159), and superseded the whole of the decree. The statute regulating procedure in this court provides as follows: "Upon the affirmance of any judgment, or order or decree by the Supreme Court, which has been wholly or in part superseded, judgment shall be rendered and entered up against the securities on the supersedeas bond, and the court shall award execution thereon." (Crawford & Moses' Digest, § 2176.)

This court has construed the statute just quoted to apply only to judgments or decrees for the recovery of money. *Stephens* v. *Shannon,* 44 Ark. 178; *Bolling* v. *Fitzhugh,* 82 Ark. 206. The fact that there was a foreclosure does not lessen the force and effect of the decree as a personal one for the recovery of the debt. *Bowser Furniture Co.* v. *Johnson,* 117 Ark. 496.) Nor does the fact that the statute (Crawford & Moses' Digest, § 6244) expressly authorizes the issuance of executions against the defendants in a foreclosure suit for the deficiency of the personal recovery after sale of the property affect the force of the statute quoted above which authorizes this court, on the affirmance of a judgment for the recovery of money, to render judgment against the sureties on the supersedeas bond. The authority of this court to render judgment is dependent upon the statute which expressly authorizes it, for there is no discretion lodged in this court where the facts in a given case bring it within the terms of the statute. It is not within the province of this court to adjust the equities between the parties by marshaling the securities for the benefit of sureties on the supersedeas bond, for that would be an exercise of original jurisdiction. *American Ins. Co.* v. *McGehee Liquor Co.,* 113 Ark. 486.

There are three cases which seem to be decisive of the question now involved. *Rogers* v. *Brooks,* 31 Ark. Ark. 194 (s. c. 30 *Ib.* 612), *Krone* v. *Cooper,* 43 Ark. 554, *Royal Theatre Co.* v. *Collins,* 102 Ark. 539. The first one of these cases (*Rogers* v. *Brooks*) was for the foreclosure of a lien and the recovery of money. This court reversed the decree as to the lien, but rendered judgment here on the supersedeas bond for the amount of the recovery of money. The last case (*Royal Theatre Co.* v. *Collins*) was an action to enforce a mechanic's lien, and the court rendered a decree against the defendant for the recovery of the amount of the debt and a foreclosure of the lien, and we decided that the appellee was entitled to a summary judgment here on the supersedeas bond for the amount of money recovered. In disposing of the case, we said: "The chancellor rendered a judgment *in personam* against the Royal Theatre Company. No contention is made that the judgment is erroneous, and it is affirmed. An appeal bond was filed, and a supersedeas was issued. The bond is in the form provided by section 1218 of Kirby's Digest, and by its terms includes the judgment *in personam* against the Royal Theatre Company. If appellants desired to stay proceedings on only a part of the judgment or decree, the terms of the bond should have been varied to that effect."

Judgment here is accordingly awarded against the sureties on the bond for the amount of the McBride debt.