## McCown v. Nicks.

### Opinion delivered May 31, 1926.

1. APPEAL AND ERROR—ACCEPTANCE OF BENEFIT UNDER DECREE APPEALED FROM.—A party may appeal from the unfavorable portion of a decree, though he accepted the benefit of the favorable portion, if a reversal cannot affect his right to the favorable portion.

2. APPEAL AND ERROR—APPEAL FROM PART OF DECREE.—A mortgagee may appeal from that part of a foreclosure decree which denies him a personal deficiency judgment against certain defendants, though he proceeded with the sale under the decree and became a purchaser thereat.

3.  MORTGAGES—ASSUMPTION OF DEBT BY GRANTEE.—Acceptance of a deed containing a stipulation for payment by the grantee of a mortgage on the property implies a promise to perform it, on which assumpsit will lie.

4.  MORTGAGES—ASSUMPTION OF DEBT—RESCISSION.—An agreement by the purchaser of mortgaged land with the mortgagor to pay the mortgagor's debt to the mortgagee may be rescinded without the latter's knowledge or consent, where no privity of contract has been established by the latter's acceptance of the purchaser as debtor.

5.  MORTGAGES—ASSUMPTION OF DEBT—RESCISSION.—An agreement by a purchaser to pay off a mortgage debt could not be rescinded by a reconveyance to the mortgagor without the consent of the mortgagee after the latter had been notified of such assumption and had extended the time of making the payment to the purchaser and the property in the meantime had decreased in value.

6.  MORTGAGES—RESCISSION OF ASSUMPTION OF DEBT—BURDEN OF PROOF. —One who, by purchase of mortgaged property, assumed and became liable to the mortgagee for payment of the debt secured, has the burden of proving that the mortgagee consented to release him on reconveying the property to the mortgagor.

Appeal from Jefferson Chancery Court; *H. R. Lucas,* Chancellor; reversed.

*Rowell & Alexander* and *Church & Gannaway,* for appellant.

*Danaher & Danaher,* for appellee.

WOOD, J.  On December 1, 1918, O. S. McCown, individually and as trustee, Moore Moore, W. B. Sivley, H. Gannaway, R. M. Hammond and B. F. Hammond Sr., sold a tract of land owned by them in Jefferson County, consisting of 227 acres, to one W. R. Willis for a consideration of $11,400, evidenced by promissory notes secured by vendor's lien reserved in the deed.  The Hammonds later assigned their interest in the purchase money notes to the other owners.  On the 29th of November, 1919, Willis and wife conveyed this land to one Dan W. Nicks for a consideration of $155.23 in cash and the assumption by Nicks of the payment of the deferred purchase money notes.  The first purchase money note for $1,500 was due December 1, 1919, which note Nicks paid.  The second note for $1,100 was due December 1,

1920, and five days before the maturity of this note Nicks requested an extension of time for the payment thereof, which was granted, and the time extended until January 1, 1921. Nicks failed to pay this note on the day it was due, and on January 12, 1921, reconveyed the land to his vendor, Willis, for a consideration recited in the deed of $100 cash and the assumption by Willis of the payment of the unpaid purchase money notes executed by him for the purchase of the land. No further payments were made by Willis or Nicks on these notes. On June 2, 1922, this action was instituted in the Jefferson Chancery Court by O. S. McCown individually, and as trustee, and by Moore Moore, W. B. Sivley and H. Gannaway, against Willis and wife and Nicks and wife, to recover judgment on the unpaid purchase money notes and certain taxes. They set up the vendors' lien, and asked that the same be foreclosed, and for judgment on the notes, and that, unless the same be paid, the lands be sold to satisfy the judgment. A *lis pendens* was filed June 2, 1922. Willis died during the pendency of the action, and the cause was revived in the name of his heirs. A guardian *ad litem* was appointed for the minor heirs of Willis, and he answered for them, denying all the material allegations of the complaint. Nicks and wife answered on June 9, 1922. They denied personal liability on the notes, and alleged that, after purchase of the land by Nicks from Willis, he and his wife resold the property to Willis, and by such sale were absolved from liability to the plaintiffs; that they were never indebted directly to the plaintiffs for the unpaid purchase money on the lands, and denied all other allegations of the complaint.

McCown testified, and, after identifying the notes and the original deed, the same were introduced in evidence. In addition to the above facts, he testified that he had correspondence with Nicks concerning the lands sold to Willis and the indebtedness therefor. He exhibited the correspondence between himself and Nicks, which was introduced in evidence. These exhibits establish the facts as above set forth. He further testified

that, at the time he received the letter from Nicks asking for an extension of time for the payment of the second purchase money note and stating that Nicks had assumed the payment of these notes, the price of the land was at its peak, and that the land could have been sold at that time for the amount of the balance of the purchase money due thereon. But that at the time witness was testifying it could not be so sold, as the market value of such lands had greatly depreciated. He testified that, when Nicks notified him that he had resold the property to Willis, witness notified Nicks that the plaintiffs would expect him to pay the notes. Witness never had any agreement with Nicks that the plaintiffs would look solely to Willis or relieve him (Nicks) from liability on the notes.

In addition to the above, there was other testimony on behalf of the plaintiffs to the effect that, at the time the payment of the second purchase money note was extended by the plaintiffs at the request of Nicks, Nicks was in good financial standing, and the extension was based upon knowledge of that fact.

Nicks testified, over the objections of the plaintiffs, that, before he reconveyed the property purchased by him from Willis back to Willis, he had a conversation with McCown over the telephone, and notified him of what they were doing; that Willis was not able to make the payments of more than forty-odd hundred dollars, and that witness was taking over Willis' interest in the property owned jointly with Willis and letting Willis have the property that witness purchased from Willis the year before. McCown said that would be all right. They would look to Mr. Willis for payment on the 227 acres and look to him (Nicks) for the payment on the 480 acres (another tract not involved), and that McCown asked for some definite time when the payment on the 480-acre tract would be expected, and that witness replied, "Not later than January 25," to which McCown agreed. Witness stated that he and Willis then consummated the deal by which he reconveyed to Willis the 227-acre tract; that he never heard anything more about

the 227-acre tract until something more than a year thereafter, when the plaintiffs notified witness that they were expecting him to pay the balance of the purchase money on this tract.

McCown testified in rebuttal that he never agreed to release Nicks from personal liability, and could not recall that Nicks had ever made such request. Witness only owned an interest of eleven thirty-fourths in the purchase money notes, and could not have made a release without the consent of the other owners. He denied that in a telephone conversation with Nicks he made any statements to the effect that Nicks would be relieved from liability on the notes for the 227-acre tract; that he would not have relieved him from liability on the notes without consideration. He had no authority from the other parties interested to relieve any one from liability, and did not agree with Nicks to relieve him from liability on said notes.

Upon the above facts the court found that Nicks was relieved from any personal liability to the plaintiffs for the purchase price of the lands being foreclosed by the acceptance by W. R. Willis of the deed from Dan W. Nicks reconveying said land executed on January 12, 1921, and entered a decree dismissing the complaint against Nicks and wife for want of equity, from which is this appeal.

The court further found that there was a balance due on the unpaid purchase money notes of $13,983.47, and entered a decree for that sum, and directed that the 227 acres be sold to satisfy such decree. There is no appeal from this part of the decree. The concluding paragraph of the decree is as follows: "It is further ordered that the report of the commissioner be made a part of the record in this cause and be included in any transcript of the record of this cause for the purpose of showing any deficiency, if any, which may exist between the sale price of said lands and the judgment herein rendered."

1. The appellee moves to dismiss the appeal on the ground that "the appellants had enforced the decree appealed from by causing the property to be sold under the decree, at which sale McCown and the other appellants purchased the property for the sum of $5,000, which sale was duly confirmed by the court." The appellee contends that this procedure on the part of the appellants is a waiver of their right to appeal from the decree, and that they are estopped thereby from prosecuting this appeal. As we construe the record from which this appeal comes, there is no appeal from that part of the decree fixing the amount of the decree in favor of the appellants and directing the lands to be sold in satisfaction of such decree. The appellants do not contend here that there was any error in that part of the court's decree. The appellants only appeal from that portion of the decree which dismisses their complaint against the appellee and results in denying the appellants any judgment against the appellee for the balance due them on the purchase money notes. Learned counsel for the appellee contend that, as the court below had held appellee free from liability, he was not bound to protect himself from loss by purchasing the land at foreclosure sale. They argued that, after a judgment had been rendered in the trial court in favor of the appellee, "Nicks had no interest in the property or in his codefendants, and no reason to think that it was to his interest to procure bidders or to bid for the property on his own account." This argument is unsound, for the reason that Nicks knew that the appellants had prayed an appeal to this court from the judgment in his favor. While the appeal was pending Nicks was bound to know that the judgment of the trial court in his favor was not final, and he could not assume that such judgment relieved him from any personal liability for the amount of the decree that had been rendered in appellant's favor against his codefendants. Nicks was bound to know that the judgment of the trial court in his favor might be reversed by this court on appeal, and that he might finally be held liable personally for

the balance of the unpaid purchase money on the notes. So long as Nicks' personal liability was thus undetermined, it is not correct to say that he had no interest in the property pledged to secure the purchase money notes and that it was wholly immaterial to him whether the land under the decree was sold for enough to satisfy the judgment. So long as the issue was unsettled as to his personal liability, Nicks was bound to know that it was to his interest to have the property at the foreclosure sale sell for enough, if possible, to liquidate the amount of the decree.

"It is quite generally conceded," says Ruling Case. Law, "that one cannot ordinarily accept or secure a benefit under a judgment or decree and then appeal from it or sue out a writ of error, when the effect of his appeal or writ of error may be to annul the judgment. * * * The rule just stated is subject to the exception that, where the reversal of a judgment cannot possibly affect an appellant's right to the benefit secured under a judgment, then an appeal may be taken, and will be sustained despite the fact that the appellant has sought and secured such benefit. * * * If it is possible for the appellant to obtain a more favorable judgment in the appellate court without the risk of a less favorable judgment from a new trial of the whole case there, or in the lower court, then the acceptance of what the judgment gives him is not inconsistent with an appeal for the sole purpose of securing, without retrial of the whole case, a decision more advantageous to him." 2 R. C. L., p. 61, § 44, and cases cited in note. The exception to the rule is quite as well established as the rule. Since the appellants have not appealed from the amount of the decree in their favor and directing a sale of the land to satisfy the same, there is no possibility that their appeal from the judgment against them in favor of the appellee may lead to a result showing that they were not entitled to what they have already received. Appellants received, as a result of the decree in their favor, only the sum of $5,000, leaving a balance due them on such judgment in the sum of

$8,983.47. There is no inconsistency whatever in appellants' accepting the proceeds of the sale of the property under the decree as a payment on such judgment, and then seeking by their appeal to have appellee held personally liable for the balance due on such decree. To be sure, the appellants would only be entitled to one satisfaction of their judgment, but, since the proceeds of the foreclosure sale did not pay the amount of the judgment, if the appellee be personally liable therefor, the appellants had the right to appeal from the judgment of the trial court holding to the contrary. In *Goodlet* v. *St. Elmo Investment Co.,* 94 Cal. 297, 29 Pac. 505, it is held, quoting syllabus 3: "A plaintiff in a foreclosure suit does not, by causing a sale under the decree of foreclosure before taking an appeal, thereby waive his right to appeal from that part of the decree fixing personal liability for a deficiency of proceeds of such sale." In *Bolen* v. *Cumby,* 53 Ark. 514, we held that "a party may prosecute his appeal from a judgment, partly in his favor and partly against him, even after accepting the benefit awarded him by the judgment, provided the record discloses that what he recovers is his in any event—that is, whether the judgment be reversed or affirmed. But he waives his right to an appeal by accepting a benefit which is inconsistent with the claim of right he seeks to establish by the appeal." See also *Mathis* v. *Litteral,* 117 Ark. 481; *Jones* v. *Hall,* 136 Ark. 348. The above doctrine clearly applies to the facts of this record. The decree, as we have seen, was divisible—partly in appellants' favor and partly against them—and the benefit accepted by appellants was not inconsistent with the claim which they seek to establish by the appeal. The appeal by the appellants, as already stated, was only from that part of the decree dismissing their complaint against the appellee. It follows that the appellee's motion to dismiss the appeal must be overruled.

2. This brings us to the consideration of the issue on the merits as to whether or not the appellee is liable personally to the appellants for the unpaid purchase

money notes executed by Willis. By the deed from Willis to Nicks the latter "agrees to pay when due and save harmless against the notes given by W. R. Willis to O. S. McCown, trustee, which are described in the deed from O. S. McCown to Willis." The doctrine of this court is that the "acceptance of a deed containing a stipulation whereby the grantee agrees to pay a mortgage on the land implies a promise to perform it; on which promise, in case of failure, assumpsit will lie." *Patton* v. *Adkins,* 42 Ark. 197; *Benjamin* v. *Birmingham,* 50 Ark. 433; *Felker* v. *Rice,* 110 Ark. 70; *Walker* v. *Mathis,* 128 Ark. 317; *Kirby* v. *Young,* 145 Ark. 507; *Beard* v. *Beard,* 148 Ark. 29; *Wallace* v. *Hammond,* 170 Ark. 952, 281 S. W. 902.

Since the appellee, under these authorities, became liable to the appellants for the debt of Willis, the issue, in the last analysis, is whether the appellee was released from his liability. On the 12th of January, 1921, the appellee and wife executed to Willis a deed reconveying to Willis the 227 acres, and in this deed Willis "agrees to pay when due and save the grantors harmless against the notes heretofore assumed by Dan W. Nicks"—the notes in controversy. Long before this deed was executed Nicks, under his assumption of the debt of Willis, paid off the first of the purchase money notes on December 2, 1919, in the sum of $1,500. McCown not only received and accepted this payment, but also notified Nicks on November 29, 1920, of the amount of the balance due on the second note, and agreed with Nicks to extend the time of payment from December 1, 1920, to January 1, 1921. There seems to be a contrariety of view in this country as to whether one who sells property upon which there is an incumbrance and procures from his grantee as a consideration, or part consideration, of the purchase price a promise to pay off the debt or incumbrance, can afterwards release his grantee from the obligation or liability to pay the debt to the creditor holding the lien. In a few jurisdictions, and by some authorities, it is held that, where the conveyance is absolute, the assumption of

the debt by the grantee is an absolute obligation in favor of the creditor holding the debt or incumbrance, and, without his consent, the grantor has no power to release his grantee from his obligation to pay the debt. *Dean* v. *Walker,* 107 Ill. 540; *Bay* v. *Williams,* 121 Ill. 91; *Ingram* v. *Ingram,* 72 Ill. 287; *Douglass* v. *Wells,* 18 Hun (N. Y.) 88; *Starbird* v. *Cranston,* 24 Colo. 20; 2 Jones on Mortgages, § 764; Devlin on Deeds, § 1093.

The question is one of first impression in our State. We think the better reason and the weight of authority is to the effect that such contract may be rescinded. There is no privity of contract with the third party holding the mortgage lien or incumbrance, and, unless he has in some manner become a privy to the contract of sale, there is no reason why the parties to the contract may not rescind the same without his knowledge or consent. Under the equitable doctrine of subrogation, the mortgagee would only be entitled to such remedy as the debtor—the mortgagor or vendor himself—has against his vendee. If these immediate parties to the contract have rescinded the same before any privity has been established between the mortgagee or lien-holder and the vendee who has assumed to pay the debt, then the mortgagee or lien-holder has no right to complain. He must stand in the shoes of the mortgagor, so far as the enforcement of any rights under the contract is concerned. But, where the mortgagee or lien-holder has accepted the contract, or asserted rights thereunder, denoting acceptance, and a privity has thus been established between him and the vendee who has assumed the debt, then the parties to the contract cannot rescind the same without the knowledge, consent or acquiescence of the lien-holder. *Thacker* v. *Hubbard,* 21 A. L. R. 414; *Crowell* v. *Surrier,* 27 N. J. Eq. 152, 156; *Whiting* v. *Gearty,* 14 Hun (N. Y.) 498, and numerous cases cited by the editors in 21 A. L. R. *supra,* at pages 462, 466. This doctrine is clearly recognized by implication in the recent case of *Wallace* v. *Hammonds supra.*

Applying the above doctrine to the facts of this record, the appellee was not released from liability by reason of his conveyance of the land to Willis and the assumption by the latter of his original indebtedness, because, long before such conveyance from the appellee to Willis, the appellants had accepted the appellee's covenant to assume the debt of Willis, and appellee had made a payment on such debt. The appellants, moreover, had changed their position by extending, at the request of the appellee, the time for the payment of the second purchase money note. By that extension, as the proof shows, the appellants were placed in a more unfavorable position, because the lands from that time began to decrease in value, and their security for the payment of the debt of Willis was thereby greatly lessened.

3. We find it unnecessary to decide, and do not decide, the issue as to whether or not McCown had authority to, and could, release the appellee orally from liability for the mortgage debt, for the reason that, even if this could be done, the testimony, as we view it, is not sufficient to show that it was done. The burden of proof as to this issue was on the appellee, and he has not met the requirements of the law in this respect. The most that could be said of the testimony on this issue in favor of the appellee is that the testimony is conflicting. The appellee testified positively that he called McCown over the phone, and that McCown consented to release appellee on the 227 acres. McCown, on the other hand, positively asserted that he never agreed to release the appellee from personal liability, and never said anything in a conversation with appellee over the phone which could possibly be construed by him as an agreement to release him from liability on the notes on the 227-acre tract. He testified that he only owned an 11/34 interest in the notes, and held the balance as a trustee for other parties, from whom he had no authority to make such release, and he did not in any conversation agree to release the appellee. Dr. Moore testified to the effect that, in the summer of 1922, he had a conversation

with the appellee, in which he told appellee that appellants had both a moral and legal right. to expect him to pay for the 227 acres, and appellee said in substance that Willis had assumed the notes. Appellee "seemed very much depressed, and claimed to be sick also, and would only say that he just didn't see how he could make the payments—how he could do it." Appellant did not deny that the conversation with Dr. Moore occurred as Dr. Moore stated above. The testimony of McCown and Dr. Moore on this issue is far more reasonable and believable than the testimony of the appellee; and it cannot be said therefore that appellee has proved a parol release by a preponderance of the evidence. On the contrary, we are convinced that the finding of the trial court on this issue is clearly against the preponderance of the evidence.

The court therefore erred in entering a decree dismissing the appellants' complaint for want of equity. For this error the decree is reversed, and the cause is remanded with directions to enter a decree in favor of the appellants against the appellee for the balance found to be due on the purchase money notes, after deducting the amount of the proceeds of the foreclosure sale, and for such other and further proceedings as may be necessary according to law and not inconsistent with this opinion.