## BOONE v. TREZEVANT.

Opinion delivered April 7, 1930.

*Ben F. Reinberger,* for appellant.

*Price Shofner, Ada Marett Carter* and *Owens & Ehrman,* for appellee.

SMITH, J. On September 28, 1927, Henry Johnson obtained a loan from the Eagle Bond & Mortgage Company for $3,250 and executed a note therefor, and to secure the payment of the note he executed to Stanley H. Trezevant, as trustee for the mortgage company, a deed of trust on a certain lot which he owned in the city of

Little Rock. This note and the deed of trust securing it were acquired by Crump & Trezevant, who brought suit to foreclose the deed of trust when default was made in making payments as the note required.

The complaint in which foreclosure was prayed made W. H. Boone a party defendant, it being alleged that on January 3, 1928, Boone had entered into a contract with Johnson to purchase the mortgaged property, and had later done so, and had agreed to assume the payment of the note secured by the deed of trust.

There was a prayer for judgment against both Johnson and Boone, and that foreclosure of the lien be decreed. A receiver was appointed pending the foreclosure with directions to collect the rents on the house standing on the lot, and to hold these rents subject to the final decree.

Boone filed an answer, in which he admitted that on January 3, 1928, he had agreed with Johnson to purchase the property, the contract therefor contemplating the exchange of a quarter-section of land in Conway County for the said lot, but that he had rescinded the contract because of the failure of Johnson to comply with the terms of the contract for the exchange of the properties.

Boone filed a cross-complaint against his co-defendant Johnson, in which he alleged the following facts: His land was worth $2,000, and was assumed to be of that value in the trade. It was represented by the agent of Johnson that the city lot was worth $5,500, and that it could and would be sold by the agent representing Johnson for that amount, whereas the city lot was worth not exceeding $3,500, and when Boone became so advised he rescinded the contract on account of the false and fraudulent representation of value which had induced him to make the trade. He admitted that he had delivered a deed to his land to Johnson, but denied that he had received a deed to the city lot, and, after alleging that Johnson had sold the land, he prayed judgment against Johnson for $2,000, its alleged value.

Johnson filed an answer, in which he admitted all the allegations contained in the trustee's complaint. He filed an answer to Boone's cross-complaint, in which he denied that any false or fraudulent representations had been made to Boone; and also filed a cross-complaint against Boone, in which pleading the following allegations were made. That he had sold the city lot to Boone in consideration of a deed to Boone's land, and the assumption by Boone of the mortgage debt due the mortgage company, and the note of Boone in the sum of $250. That this contract had been fully carried out by the execution and delivery of deeds, and the execution and delivery of the $250 note. Johnson prayed that the court retain jurisdiction of the cause for the purpose of rendering judgment in his favor against Boone for any balance which might remain due upon the note to the mortgage company after the sale of the city property under the decree of foreclosure.

The testimony shows that the negotiations between Johnson and Boone were opened by the submission to Johnson of the following written offer:

"December 28, 1927.

"Real Estate Department,

"Central Bank,

"Gentlemen:

"I herewith submit to you the following offer of trade for the Henry Johnson place, at 219 North Monroe, on which there is a $3,250 loan, which I agree to assume, and for Mr. Johnson's equity in said place I will agree to give 160 acres, located in Conway County, Arkansas, within 3 miles of Martinsville, described as follows: NE¼ of Sec. 8, Twp. 8 N., R. 14 W., containing 160 acres, more or less. This 160 acres free and clear of all incumbrances. It is understood and agreed that Mr. Johnson will have electric light fixtures installed at 219 North Monroe and the gas line run to the house from the street. It is further agreed that each owner will furnish

an abstract showing good title to said properties mentioned herein.

"It is understood that Mr. Johnson is to pay Central Bank, Real Estate Department, $250 sales commission.

"Yours very truly,

(Signed). "W. H. Boone,

(Signed) "Addie L. Boone.

"Will trade and your $250 note due 90 days.

(Signed) "W. H. Boone."

Johnson had never had any communication with Boone prior to the submission of this offer, and it is very clearly the fact that the employee of the real estate department of the bank who submitted this offer was acting as the agent of Boone, who admitted that before authorizing this offer he had inspected the city property he was proposing to buy.

Indorsed upon this offer submitted to Johnson was an acceptance in the following terms:

"12-28-27. I will trade on a basis of $5,500 for the house, and $2,000 for land. This will leave a balance due me of $250. I agree to pay the commission. Allowance to be made of ($45) forty-five dollars for fixtures (Elec.).

(Signed) "Henry Johnson."

The explanation of the figures appearing in Johnson's acceptance of Boone's offer which the testimony clearly establishes is this. A valuation of $5,500 was placed on the city lot, against which there was a loan of $3,250, leaving a net value of $2,250. Boone's land was accepted at a valuation of $2,000, leaving still a balance in Johnson's favor of $250, for which sum a note was executed to Johnson's order, and which was indorsed by him to the bank in payment of its commission for negotiating the sale.

Deeds were executed but not immediately delivered; in fact, both deeds were left at the bank pending the examination and approval of the titles. The $250 note was executed by Boone to Johnson, and by him indorsed and delivered to the bank.

Boone now complains that no abstract of title to the city lot was ever submitted to him for his examination or approval. It does not appear, however, that he ever made any such demand. The abstract was in possession of the mortgage company, and Boone knew, of course, that the mortgage company had approved this title when it made the loan, and he appears to have waived his right to have an abstract of the title submitted to him.

Boone submitted an abstract of the title to his land, and objections to the title were made, which were later removed. This examination of Boone's title appears to have delayed the delivery of the deeds, but the deed from Boone was finally delivered by the bank when the title to the land had been approved. The bank retained possession of the deed to Boone until May 8, 1928, at which time it mailed him the deed, but he declined to receive it and returned it to the bank, and stated that he had been defrauded and would rescind the contract.

It appears, however, that prior to this incident possession of the house and lot had been delivered to Boone, who agreed that the bank might collect the rents thereon and apply them to the payment of his $250 note, and the rents were so collected and applied, so that on March 4, 1929, a balance of only $74.93 remained unpaid. Boone admitted that he did this because he knew he was obligated to pay the note. It further appears that on September 19, 1928, Boone made a payment of $50 to the mortgage company, and on October 18, 1928, made a second payment of the same amount, and the managing officer of the mortgage company who received these payments testified that when they were made Boone told him he had purchased the city lot, but when he later made demand upon Boone for additional payments Boone said he had rescinded the sale.

The chancery court rendered a decree foreclosing the mortgage, and found the fact to be that Boone had assumed the payment of the note which it secured. Judgment was rendered in Johnson's favor for the

$74.93 balance due on the $250 note, and it was adjudged that Johnson should have judgment against Boone for any deficiency remaining due on the mortgage note after the sale of the city lot.

The commissioner appointed in the decree of foreclosure to make the sale reported that the property had been sold to Crump & Trezevant for $2,800. A petition was filed by Boone protesting against the confirmation of this sale, but the testimony taken on the hearing of this protest does not appear in the record, and the report of sale was confirmed.

The testimony establishes the fact that both Johnson and Boone placed excessive valuations upon their property in making the exchange. Johnson testifies that he sold the land he had received from Boone for $850 in second mortgage paper, which he thought was worth something less than $600, and which he would be glad to sell for that amount.

The only real question in the case is one of fact whether Boone had the right to rescind, and he bases his right so to do upon the alleged false representations made to him by the employee of the real estate department of the bank that the city property could be sold for $5,500, and that a sale was about to be closed at that price, of which Boone would have the benefit, whereas the property was not worth $5,500, and no offer of that amount had been received for it.

It would unnecessarily extend this opinion to review all the testimony, and it will suffice to say that the court was warranted in finding, as it no doubt did find, that no fraud was practiced upon Boone, who inspected the property before buying it, and that it was substantially his own proposition, which Johnson accepted, as appears from the writings hereinabove set out.

Moreover, it appears that Boone brought suit against Johnson to cancel his deed to Johnson, but this suit was dismissed by Boone on his own motion. Boone testified that he dismissed the suit, because it was then

represented to him by the officers of the real estate department of the bank that a sale of the city lot could and would be made at $5,500; but this testimony was denied. On the contrary, the manager of the bank's real estate department testified that Johnson and Boone discussed their differences and shook hands, and it was agreed that the suit to cancel the deed should be dismissed upon Johnson doing certain work on the house, which appears not to have been quite completed when the exchange was made, and Johnson testified that he had done this work and had paid for it. It does not appear to be denied that Johnson did do this work and had paid for it, and, if so, this was a new consideration moving from him to Boone.

This testimony, which was evidently credited by the chancellor if he found there had been fraud, would be an affirmation of the contract. The chancellor made no findings of fact except that Boone had assumed the payment of the mortgage, but his decree must have been predicated upon the finding either that there had been no fraud, or, if so, that the sale had been ratified notwithstanding that fact, and either finding would not, in our opinion, be contrary to the preponderance of the evidence.

If the exchange of the property is not to be rescinded, and we affirm the chancellor's action in denying that relief, the liability of Boone subsists to discharge any deficiency judgment resulting upon the sale under the decree of foreclosure, for the law is as stated in a headnote to the case of *Wallace* v. *Hammonds,* 170 Ark. 952, 281 S. W. 902, that "where a purchaser of mortgaged lands from the mortgagor assumes and agrees to pay the mortgage debt, he becomes personally liable therefor, which liability inures to the benefit of the mortgagee, who may enforce it in an appropriate action." See, also, *Kirby* v. *Young,* 145 Ark. 507, 224 S. W. 970; *Walker* v. *Mathis,* 128 Ark. 317, 194 S. W. 702; *Felker* v. *Rice,* 110 Ark. 70, 161 S. W. 162.

As the finding of the chancellor does not appear to be against the preponderance of the evidence, the decree must be affirmed, and it is so ordered.