SEAMAN, District Judge
(after stating the facts as above). Upon each side an objection is raised which must be determined before inquiry is open upon the merits: (1) By the defendants, that equitable jurisdiction is barred, because there is an adequate remedy at law; and (2) by the complainants, that the defenses of false representations or mistake can be heard only upon a cross bill for affirmative relief.
1. The first objection is met by the doctrine, which is established for this court, whatever may be the conflict in other jurisdictions, that:
“The grantee is not directly liable to the mortgagee, at law or in equity; and the only remedy of the mortgagee against the grantee is by bill in equity in the right of the mortgagor and grantor, by virtue of the right in equity of a creditor to avail himself of any security which his debtor holds from a third person for the payment of the debt. Keller v. Ashford, 133 U. S. 610, 10 Sup. Ct. 494; Willard v. Wood, 135 U. S. 309, 10 Sup. Ct. 831;” Insurance Co. v. Hanford, 143 U. S. 189, 190, 12 Sup. Ct. 437; Willard v. Wood, 164 U. S. 502, 519, 17 Sup., Ct. 176.
If, therefore, it be assumed that this point is well presented by the answer, it must be overruled.
2. The second contention, on behalf of the complainants, which *43 would debar any defense of fraud or mistake in the transaction arising between tbeir grantees and mortgagors and the defendants as succeeding grantees, except through the affirmative and direct relief of rescission under a cross bill, for which Moore and Hibbert are indispensable parties, is, in my opinion, untenable. The authorities cited to that end would be applicable in an action of foreclosure by Moore and Hibbert, and it may be that their actual presence as parties here would authorize such course. But they are neither present, nor within the jurisdiction of the court. On the other hand, the complainants are in a court of equity, seeking subrogation to the rights of Moore and Hibbert, and no relief can be granted unless it accords with the principles of equity, which are “founded in benevolence, and administered to promote justice and right.” They are strictly limited to such rights and benefits as Moore and Hibbert could enforce against the defendants. City Mission v. Brown, 158 U. S. 222, 227, 15 Sup. Ct. 833; Willard v. Wood, 164 U. S. 502, 521, 17 Sup. Ct. 176. So considered, the defendants are entitled to the full benefit of the rule which permits defensive relief in equity whereby any fraud or mistake which would defeat recovery as between the contracting parties may be set up by way of defense to defeat the enforcement of the apparent obligation or liability for the benefit of a stranger to the contract, as creditor or mortgagee. 2 Pom. Eq. Jur. § 872; Tarleton v. Vietes, 1 Gilman, 470; Benedict v. Hunt, 32 Iowa, 27. Rescission may be necessary for complete relief between the contracting parties, but when the creditor or mortgagee of one contractor is permitted to come in for its enforcement against the other party according to equity, he must be subjected to any showing of facts which would prevent recovery in a suit by the contracting party. To deprive the defendants of this right because the necessary party for a decree of rescission has not been brought in would close the doors of equity against the equitable considerations which are of the essence of the jurisdiction. In this view, the answer tenders a valid defense.
The allegations of the answer are, in my opinion, fully sustained by the testimony, as to the representations made by Moore and Hibbert, and the defendants’ reliance upon them in entering into the purchase in question. Those representations were made in the written report of Capt. Hibbert, and in the oral statements by Moore and Hibbert, which are shown by the testimony of Timlin, Turner, and Burke. The testimony of Moore and Hibbert is in many respects evasive, and, upon the whole, cannot be regarded as materially contradicting the defendants’ witnesses. Moore and Hibbert were well known by the defendants as men of large experience in iron mining; had been prospectors and operators in the Lake Superior mining district for many years; and their reputation in such matters gave good ground for assuming that their explorations would be well conducted, and their information reliable, as to the conditions found. Their representations appear of the following effect: That the property offered for sale consisted of about 1,000 acres, covering 4 miles in length; that on one *44 portion there was a trench showing an immense body of solid iron, ore, 12 feet in width, and, if the trench were continued south, it would show a still greater width, because the ore extended under the ground in that direction; that at another place on the property there was an immense outcropping of manganiferous ore; that on the eastern end, at the bottom of the creek, there was solid ore 20> feet wide, and running under the earth, being from 150 to 250 feet lower than the exposed ore on the hillside; that on the west end of the property there was a large body of ore, solid and in place, to. the width of 100 to 150 feet; that all of the foregoing deposits of' ore were in one lead, and covered a distance of 4 miles; that they (Moore and Hibbert) had become familiar with the geological formations existing in Virginia, and assured the defendants that there-was a continuous vein of ore in place on the property, of which they-had found the foot wall and hanging wall, and the ore in place between them; that there was on the property a permanent deposit of ore of great depth, which had been found by them to be in place;: that the iron ores in Virginia were of two kinds,—limonite or drift-ore, which lay over the limestone strata, and iron ore in place, or regularly stratified, lying between the sandstone foot wall and the limestone hanging wall; that the deposits upon this property were-of the latter class, which were always permanent and of great depth; that 3,000,000 tons of ore were in sight upon the property; that Moore and Hibbert had tested the vein in the creek bottom to-the width of 20 feet; that there was a vein of ore 4 miles long, which they had tapped in several places and found continuous and in place; that every test pit upon the property was bottomed on a solid ledge of iron ore in place; that they had made sufficient explorations to establish the fact that the ore was in place between-the foot wall and hanging wall, and regularly stratified, and in large quantities,—one end of the vein being at least 20 feet, and the other at least 100 feet,—and they had found and traced the foot wall; the entire length of the property. The defendants assert that they entered into,the contracts with Moore and Hibbert relying entirely upon these assurances, and there is no evidence which fairly raises a doubt upon this point. It is true that both Timlin and' Turner made separate visits to the property before concluding the-arrangement, but they were each informed by Moore and Hibbert that the owners had more favorable offers, and would not permit further explorations before purchase, and that the explorations-which they had made as the foundation of their assertions could be-relied upon for closing the purchase; and the testimony further shows that the inspection upon these visits could not have disclosed the true state of the previous explorations, or their results, without reopening the trenches and pits, for the reason that all off the alleged indications of ore were then covered by surface filling. The representations upon which the defendants relied were of existing facts; of conditions which were discoverable by an expert in' the careful and systematic explorations, which were justly presupposed, both from the written report and the oral statements. They are clearly distinguishable in all essential features from the- *45 mere expressions of opinion or judgment, or the justifiable “trade talk,” which mark the line of cases cited on behalf of the complainants, of which Development Go. v. Silva, 125 U. S. 247, 8 Sup. Ct. 881, and Tuck v. Downing, 76 Ill. 71, are examples. Disregarding all estimates of the amount of ore “in sight,” or of the daily output promised, the facts stated as to the vein of ore-found in place, and of its discoverable extent and depth, if true, would give assurance of a valuable mining property, when taken in connection with the accessibility, and other patent elements. The testimony demonstrates that no such facts existed; that there was no body or vein of ore in place which fulfilled the representations in any substantial particular. Although some iron ore was found, it was largely -of so-called “wash ore.” There was no considerable body in any place, and none of the evidences were found which Moore and Hibbert specified as showing a body or vein of ore. It further appears from the testimony of Moore and Hibbert, introduced by the complainants, that no such explorations were made, either by them or under their direction, as were clearly implied by their report and were expressed in their oral statements, but that, resting upon assumptions from surface indications and hearsay, they imposed their mere deductions therefrom upon the defendants as facts ascertained by actual explorations.
The complainants urge that the proofs do not show that the property is worthless, in fact, for mining purposes, and that the efforts on the part of the defendants for its development were insufficient. But this objection is without forcé, as it appears that their actual expenditures to that end amount to over $16,000, aside from the payments for purchase money; that the work was conducted by mining experts; that it was prosecuted with diligence and skill, and to the utmost extent which could reasonably be required to divulge that there was no ore attainable in substantial quantity, and that the evidences of its existence specified in the representations were not present in the land. The bona lides of the complainants is also asserted as favoring their right to maintain this action, and they earnestly dispute the testimony which is introduced on behalf of the defendants as tending to show conduct on their part in aid of the deceit, and their information of the defendants’ reliance upon the false representations; but the right of Moore and Hibbert is the vital issue, and the utmost of good faith on the part of the complainants cannot aid their recovery here, if Moore and Hibbert are without right. As above indicated, my conclusions are in favor of the defendants upon this issue, and the bill of complaint must be dismissed for want of equity. It is so ordered, with costs against the complainants.