## MARQUSEE v. HARTFORD FIRE INS. CO. †

(Circuit Court of Appeals, Second Circuit. July 10, 1912.)

No. 232.

1. INSURANCE (§ 112*)—CONTRACT WITH UNAUTHORIZED AGENT OF PROPERTY OWNER—RATIFICATION AFTER LOSS.

A contract of insurance, made by one assuming without authority to act as agent for the owner of the property insured, may be ratified by such owner at any time before the insurer has withdrawn, even after

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
† For opinion on rehearing, see 198 Fed. 1023.

the property has been destroyed by fire and he has knowledge of such fact.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 134; Dec. Dig. § 112.*]

2. CORPORATIONS (§ 406*)—POWERS OF OFFICERS—PRESIDENT.

The president of a corporation, whose by-laws provide that "all contracts or obligations of any kind which may be entered into shall be made by the board of directors," has no power to contract for insurance in behalf of the corporation.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1611–1614; Dec. Dig. § 406.*]

Lacombe, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Southern District of New York.

Action at law by Julius Marqusee against the Hartford Fire Insurance Company. Judgment for defendant, and plaintiff brings error. Reversed.

Fried & Czaki (Frederick M. Czaki, of counsel), for plaintiff in error.

Ivins, Mason, Wolff & Hoguet (T. A. Hammond, Herbert D. Mason, Randolph W. Childs, and Robert L. Hoguet, of counsel), for defendant in error.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

WARD, Circuit Judge. March 16, 1909, one McIntosh telephoned from his country place to Wilson, the agent of the Hartford Fire Insurance Company (the defendant) at Quincy, Fla., asking him to cover the stock of tobacco belonging to Kline Bros. & Co. (plaintiff's assignor) at that place with insurance against fire for one year from March 16, 1909, for the sum of $3,500. On the same day Wilson wrote the policy in suit for the defendant and took it to the warehouse of Kline Bros. & Co. with the intention of delivering it to McIntosh, and, not finding him, left the policy there for him. March 19th the property was totally destroyed by fire. Within a week thereafter McIntosh tendered to the defendant's agent the premium, which the latter refused to take; but the defendant did not deny liability until April 30, 1909, when it wrote:

"Messrs. Kline Bros. & Company, Quincy, Fla.—Gentlemen: This is to notify you that the paper which you hold, purporting to be a policy of insurance against loss by fire, dated March 16, 1909, No. 985, we have just learned after diligent inquiry is not and never was a contract of this company. In the event that it shall appear we are mistaken either as to the fact or the law upon which this conclusion is based, we further notify you that this company hereby specifically denies liability under such policy.

"Yours very truly, Hartford Fire Ins. Co.

"Egleston & Prescott, General Agents."

The statement that the policy delivered "is not and never was a contract of this company" is founded upon the proposition that McIntosh had no authority to represent Kline Bros. & Co. when he ordered the insurance. A great deal of evidence on this subject pro

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

and con was offered at the trial. McIntosh was a stockholder, had been president, and was at the time he ordered the insurance in possession of the warehouse and claiming to act as president. The circumstance that the premium had not been paid is immaterial, because the delivery of the policy before receiving it amounted to a giving of credit. Stewart v. Insurance Co., 155 N. Y. 269, 49 N. E. 876, 42 L. R. A. 147.

The trial judge directed a verdict for the defendant, apparently upon two grounds, which he had passed upon in a previous action arising out of the same fire (Kline Bros. & Co. v. Royal Ins. Co. [C. C.] 192 Fed. 378) viz.: First, that McIntosh had no authority to make the contract for Kline Bros. & Co.; and, second, that they could not ratify it after the fire had occurred.

[1] No one disputes the general principle that one may ratify an unauthorized contract made on his behalf and that the effect is the same as if he had himself originally made the contract. It is expressed in the Latin maxim: "Omnis ratihabitio retrotrahitur et mandato equiparatur." The very idea of ratification implies that one party has an option to ratify or not, and that he has this advantage over the other party, to wit: That he may hold the other party whether the other party wish it or not, whereas the other party cannot hold him if he is not willing to be held. The English cases go so far as to hold that one may ratify even after the other party has withdrawn from the contract. Boulton Partners v. Lambert, 41 Chan. Div. 295; In re Tiedeman, [1889] 2 Q. B. D. 66; In re Portuguese Consolidated Copper Mines, Ltd., [1890] 62 L. T. R., 88.

It is not surprising that the trial judge refused to follow these cases, and it is not necessary for us to go so far in holding that the judgment below is erroneous. Before ratification an unauthorized contract is not binding, because it is not mutual. The party discovering the lack of authority may therefore withdraw. When he has done so there is nothing to ratify. What shocks us at first blush is that one may ratify an unauthorized contract after he knows that it is to his own advantage to do so, and so bind the other party to his apparent disadvantage. Further reflection, however, causes this apparent unfairness to disappear. The other party, having agreed to be bound by this contract and not having withdrawn from it, has no ground to complain if compelled to perform; the original lack of authority having been cured.

The latest English case cited fully sustained the view of the court below. Grover v. Mathews, [1910] 2 K. B. 401. In it the plaintiffs had a policy of the defendant on their factory for £1,000 for 12 months from March 26, 1908. It had been effected through their broker, Brows, by another broker, Dott, representing the defendant. March 4, 1909, Brows wrote to Dott asking that the policy be renewed. March 5th Dott sent a binder renewing it. March 27th the factory was destroyed by fire, and on that date two directors of the plaintiff company sent the premium to Dott, who declined to accept it. The question was whether, assuming that a valid contract for fire insurance had been made through Brows with the defendant by Dott on behalf

of the plaintiff, but without their authority, the plaintiffs could ratify it after the loss occurred. Hamilton, J., held that they could not. We cannot approve this conclusion.

Cases arising out of policies taken out by carriers or bailees and maritime policies for the benefit of whom it may concern throw no light on the question under consideration, because in them the insurer must be held to have insured any person whose interest the insured intended to cover.

[2] We agree with the court below that the plaintiff failed to prove that McIntosh was authorized to contract for Kline Bros. & Co. If they had been sued for the premium on the policy, they could have successfully defended, unless the company proved ratification. But as in this case their assignee is claiming on the policy, proof of ratification lay upon him. It is true that the record does not show expressly whether Kline Bros. & Co. ratified the contract before April 30th, when the defendant withdrew from it, although it may be inferred from the defendant's letter of that date, the pleadings, the conduct of the parties, and the course of the trial that they had made claim on the policy before it. However, as the case was decided, so far as this question is concerned, on the ground that they could not ratify after the fire, we think there ought to be a new trial, at which the plaintiff will have an opportunity of showing, if he can, that they did ratify the contract before the defendant withdrew from it.

The judgment is reversed.

LACOMBE, Circuit Judge (dissenting). I am unable to concur with the majority of the court. It seems too clear for discussion that McIntosh, the old president of the company, had no authority—express, implied, or to be inferred—to make a contract of insurance binding on Kline Bros. & Co. He certainly had no such express power conferred upon him as president. The powers of the president as defined by the articles of incorporation were merely to preside at all meetings; to have supervision of the affairs of the company *under the direction* of the board of directors; to sign or countersign all certificates, contracts, and other instruments of the company, as authorized by the board of directors; and to make reports. When this strictly limited delegation of authority is compared with the paragraph in the fourth article, quoted infra, it is manifest that the corporation was scrupulously careful not to give the president the power to effect contracts of insurance which should be binding on it. That paragraph reads as follows:

"All purchases and sales of any kind by the company and *all contracts or obligations of any kind* which may be entered into *shall be made by the board of directors*, who, acting jointly, shall have the entire control and management of the affairs of the company, the receipt and disposal of its assets and the payment of its obligations, and the incurring of any liabilities for the company."

Nor does the record disclose any delegation to McIntosh, by the board of directors, of authority to make this or any other binding contract. At a meeting of the incorporators held December 16, 1908, McIntosh, Rogers, and E. A. Kline were elected the board of directors.

Subsequently on the same day the board elected McIntosh president, Kline vice president, and Rogers secretary and treasurer, "to hold office until the first regular election of officers under the by-laws of the company and until their successors are chosen." At that same meeting the board passed a resolution providing that McIntosh as president, for a period of four months from the date of the resolution, be paid a salary of $62.50 per month, for acting as president of the company and giving his time and services towards the preservation of the assets of the company and their disposition, *under the direction and control of the board of directors.* This resolution reserved to the board their power to make contracts. The president could enter into any specific contract only when *directed* to do so by the board. The record is barren of any evidence tending to show that prior to the attempted making of the contract in suit he had undertaken to bind the company by making any contract which they had accepted. There is not a scintilla of proof on which plaintiff could ask a jury to infer that McIntosh was being held out to the world as a person authorized to make contracts beneficial to the company.

As to ratification I am in entire accord with Judge Hand's discussion of the question, and as to his conclusion that until after the fire "defendant had no knowledge that McIntosh had not bound the plaintiff's assignor to pay the premium and that its own undertaking had, therefore, been without consideration from the outset." I cannot reach the conclusion that there is no unfairness in the application of the doctrine of ratification to the case at bar. It seems to be an element of that doctrine that the party sought to be bound by the ratification of a contract, until then void because of lack of mutuality, should have a fair and equal opportunity to withdraw at any time before ratification. It certainly is a very harsh rule which would allow Kline Bros. & Co. to hold this policy, it may be for weeks, without ratification, able to defend against a suit for premium on the ground that it never made a contract, but with the privilege of consummating the contract by ratification as soon as a fire might break out. It can only be sustained on the theory that until ratification either side has the right to withdraw; but the insurance company's "right to withdraw" is a mere illusion, if it has no knowledge of the facts which would authorize it to exercise such right. The proposition is peculiarly wicked in this case, because of what happened at the trial to defendant's so-called "second defense." The trial judge struck it out entirely at the very outset of the trial. He did so because he understood that, by a prior decision of another judge upon a motion in reference to the pleadings, it had been held that the matters set up in this part of the answer constituted no defense. The policy contained a provision that:

"This entire policy shall be void if the insured has concealed * * * any material fact or circumstance concerning this insurance or the subject-matter thereof."

The answer set up that McIntosh, when he applied for the policy, concealed the fact that there were internal dissensions within the company. These were not merely ordinary controversies between con-

flicting interests. They had reached such a stage that one party had secured an alternative mandamus to secure its possession of its property, books, and papers, and the leader of the other party had taken forcible possession of the personal property which was the subject of insurance at the point of a pistol. It is contended that these facts were material, that they had an important bearing upon the subject-matter, indicating the presence of what is called in insurance law a *moral risk,* of the existence of which good faith required that an applicant should advise the party with whom he seeks to effect insurance. It would seem that these circumstances might reasonably induce the underwriter either to decline to issue a policy or to charge a premium commensurate with the increased risk.

Unadvised as to these circumstances and as to the further fact that McIntosh's dealings with its agent had given it no right to exact payment of a premium from Kline Bros. & Co., the insurance company, it seems to me, was misled as to its right to withdraw before ratification, and has good ground to complain of the application of the doctrine of ratification.