[Civ. No. 3644. Third Appellate District.—January 8, 1929.]

ALLEYNE VON SCHRADER et al., Respondents, v. JACK MILTON et al., Defendants; LONG BEACH NATIONAL BANK, Appellant.

194

Chandler, Wright & Ward for Appellant.

Clay Carpenter and Norman T. Mason for Respondents.

TUTTLE, J., *pro tem.*—This is an action to recover $4,800 which respondents allege was obtained from them through fraud. Judgment went for plaintiffs in the sum of $2,635. Only one defendant, Long Beach National Bank, appeals from said judgment.

On February 21, 1923, Alice Welstead, assignor of plaintiffs, entered into a contract in writing to purchase from defendant Bolivar Holding Company, for a consideration of $9,300, 93 shares of its capital stock, and, also, a 99-year lease upon an apartment in a building to be erected by said corporation. Said contract was thereafter assigned to plaintiffs, who assumed all the obligations thereunder. At the time of said assignment only $100 had been paid on the said stock and lease, which at all times were deposited with defendant bank, as trustee. On April 4, 1923, plaintiffs paid to defendant bank, on account of said contract, the sum of $4,800. Of this amount $1,700 was in the nature of a bonus and this bonus was paid over at once by the bank to defendant Milton Realty Company, leaving the sum of $3,100 in the hands of defendant bank. There was also deducible from said last-named amount fifteen per cent broker's fee, making the net amount of $2,635 to be accounted for by appellant.

The promoters of the scheme proposed to build an apartment house with the proceeds from stock sales and the subscriber of each block of stock was to have a 99-year lease upon an apartment in said building.

Under a permit issued by the state corporation commissioner, defendant, Bolivar Holding Company, "proposed to impound the moneys received from the sale of stock to the public with the Long Beach National Bank (one of defendants herein) under an agreement whereby the first $40,000.00 raised will be used to meet the first payment on the real estate described, the next $85,000.00 to pay off the existing mortgage, and the following $150,000.00 in order to start construction of its building. In the event that building is not constructed, all moneys paid in on stock shall be returned to original subscribers."

After the said permit was issued, defendant Bolivar Holding Company (referred to herein as the holding company) and defendant bank entered into an "agreement and Declaration of Trust." Among the terms of this agreement were the following: The bank was to receive deposits under the terms of the permit, and to act as depositary, trustee, stock transfer agent and stock registrar in connection with the financing and consummation of the undertaking, and no issue of stock was to be valid until registered by the bank; the bank could loan money to the trustee, and it had a prior lien upon the real property as security for such loans. Particularly pertinent are the following portions of said agreement:

"That whenever additional sums aggregating not less than one hundred and fifty thousand dollars ($150,000.00) shall have been so deposited with the depositary, the same shall be by the depositary paid to the trustee and such sums shall be by the trustee used for the uses and purposes and pursuant to the terms and conditions hereinafter set forth. . . .

"(c) That in the event that there shall not be deposited with the depositary on or before two (2) years from date hereof additional sums aggregating not less than one hundred and fifty thousand ($150,000.00) dollars for use pursuant to the purposes mentioned in said permit, such additional deposits which may have been received by the depositary shall be by the depositary returned to the respective depositors thereof, less such portion thereof as may have been paid by the depositary to the holding company as and for a sales commission fund. . . .

"That if the title to the said real property shall be vested in the trustee, free and clear of said mortgage indebtedness, and if the said fund of one hundred fifty thousand dollars ($150,000.00) or such lesser amount as may be deemed sufficient by the trustee, shall be created and under the control of the depositary, on or before two years from date hereof, or if the trustee, in the exercise of its absolute discretion shall consider its act to be for the best interest of depositors, the trustee shall convey the title to the said real property, in the condition which it may then be, together with such net sums as may be in its hands available for the purpose, to the holding company, and that by such conveyance the

depositary and trustee shall be wholly relieved and discharged from all duties, responsibilities and liabilities arising hereunder.''

The sad part of the story follows: Sufficient funds to finance the proposition were not collected. The building hardly progressed to completed foundations. The bank turned over to the holding company the money collected before a sufficient amount to complete the building had been paid in. Plaintiffs notified the bank to withhold any payments to the promoters and demanded their money back. The bank did not repay the money. The promoting corporation drifted into bankruptcy. There was no salvage and the investors lost their all. The saying that ''it is an ill wind that blows no good'' was never better nor more appropriately applied than to this episode of high finance. Thousands of dollars were paid out, as the evidence shows, to the promoters under the cloak and guise of ''commissions'' and ''bonuses.'' The spirit, if not the letter, of the permit issued by the corporation commissioner was openly flaunted and violated. The bank received $5,000 for acting as ''Trustee,'' $10,000 as a bonus for a loan of $100,000, besides a percentage on collections and other perquisities. After all was over and the smoke of battle cleared away, the only losers were the investors.

The pleadings of respondent and the manner in which the issues of the case were finally determined are assailed by appellant with great vigor and from many points of attack. Three amended complaints were filed. The case went to trial upon the second amended complaint, and the third amended complaint was filed after submission, and with permission of court, to conform to the proofs. It is quite apparent that, originally, respondent started out with an action to rescind the assignment agreement upon the ground of misrepresentations made by defendant holding company. The second amended complaint, however, charges all defendants with these misrepresentations. The third amended complaint contains additional matter which is merely an elaboration of the allegations of the prior complaint. In substance, the final complaint sets up that plaintiffs were induced to enter into said assignment contract through misrepresentation made upon the part of defendants; that defendants made the following representations, which were not

true—the money paid in by plaintiff would be held by the bank as trustee and that no money would be released until sufficient funds accrued from sale of leases or apartments in the proposed building to construct the same; "that plaintiffs were induced to and did purchase the interest of Alice Welstead in said stock and lease, take to themselves the assignment of said application and paid said $4,800.00 to defendant, Long Beach National Bank, by reason of the following statements and representations made to them at and immediately prior to said assignment by the defendant Long Beach National Bank, in which statements the defendant Bolivar Holding Company joined and concurred, upon which the plaintiffs relied and but for which they would not have made said purchase or paid said money, to-wit: That the defendant bank held the title as trustee to the land on which the El Bolivar Building was to be erected and that the plaintiffs need have no fear whatsoever in making their proposed investment; the defendant bank was the trustee and plaintiffs' money would be held by it in trust until the completion of the proposed building and not a cent of it would be released until sufficient funds were on hand to start construction and to finish the building; that the money paid for shares in the Bolivar Holding Company was being impounded with the defendant bank as trustee and that no money would be released until sufficient funds accrued from sale of leases or apartments in the proposed building to construct the same; that if sufficient money was not collected to insure the completion of the proposed building, the money paid in by plaintiffs on the proposed investment would be returned to them; that it would be held by the defendant bank without interest, but would be returned to the plaintiffs in case enough apartments in the proposed building were not sold to assure its completion; that the money would be kept by the defendant bank, as it were, in escrow, and that in case enough apartments were not sold to assure the completion of the proposed building the defendant bank would give their money back to plaintiffs, without interest; that more than enough apartments were sold the first week to assure the erection of the proposed building and that there were but two double apartments left unsold."

Plaintiffs also alleged that notice of rescission of the assignment contract had been duly served, and they prayed

that said contract be rescinded and that the sum of $4,800, which they had paid thereon, be returned to them. There was also a prayer for general relief.

The answer denied these allegations in respect to the alleged false statements, and also set up defenses of laches and estoppel. The trial court found the said allegations of the complaint to be true, and, also, against the affirmative defenses. Judgment was entered that plaintiffs recover the sum of $2,635 from defendants bank and holding company.

■ It is contended that the complaint does not state facts sufficient to constitute a cause of action. This argument is based entirely upon the theory that the cause of action upon which the judgment is founded is one for rescission of a contract. It will be observed, however, that appellant was not a party to the contract referred to in the complaint. It must be conceded that an action for rescission, under such circumstances, cannot be maintained against appellant. We have the unusual situation of a complaint stating or purporting to state a cause of action based upon rescission against certain defendants, and a cause of action arising out of fraud and deceit against another defendant. Appellant concedes that an action for fraud and deceit might have been maintained by plaintiffs, but contends that the prayer of the complaint shows conclusively that the action is not of that character, as no damages are sought, and that there is no allegation of damages in the complaint. The prayer asks for rescission of the contract, and that plaintiffs recover the consideration of $4,800 and "for such other and further relief as to the Court shall seem just and equitable in the premises."

■ In determining the cause of action, the prayer of a complaint has very little controlling force. It is simply a statement of the relief plaintiff believes should be granted to him, and if he misconceives the form of relief the courts will, nevertheless, allow him to proceed where the facts stated show *some right of recovery*. (*Zellner* v. *Wassman*, 184 Cal. 80 [193 Pac. 84].) It is not necessary or essential that a complaint should state a cause of action for the relief which plaintiff seeks in his prayer. In defining the relief which may be granted to plaintiff, section 580 of the Code of Civil Procedure provides that "the court may grant him any relief consistent with the case made by the complaint and

embraced within the issues." Many years ago our supreme court took a decided stand in upholding a liberal construction of pleadings, as plainly appears in the following excerpt from the opinion in the case of *Walsh* v. *McKeen,* 75 Cal. 519 [17 Pac. 673]):

"As to the alleged change in the nature of the action, an answer is found in the fact that we have in this state but one form of civil actions for the enforcement or protection of private rights (Code Civ. Proc., sec. 307); and where an answer has been filed, any relief may be granted to the plaintiff which is consistent with the facts stated in the complaint. (Code Civ. Proc., sec. 580.) An action does not now, as formerly, fail because the plaintiff has made a mistake as to the form of his remedy. If the case which he states entitles him to any remedy, either legal or equitable, his complaint is not to be dismissed because he has prayed for a judgment to which he is not entitled. 'Legal and equitable relief are administered in the same forum, and according to the same general plan. A party cannot be sent out of court merely because his facts do not entitle him to relief at law, or merely because he is not entitled to relief in equity, as the case may be. He can be sent out of court only when, upon his facts, he is entitled to no relief, either at law or in equity.' (*Grain* v. *Aldrich,* 38 Cal. 520 [99 Am. Dec. 423]; *Emery* v. *Pease,* 20 N. Y. 64; Pomeroy's Remedies, sec. 71.)"

In the instant case, it is alleged that plaintiff was induced, through fraudulent representations made by appellant, to pay over to it the sum of $4,800, and judgment is asked for that amount. While the word "damages" or other word of similar import was not employed in the complaint, the facts pleaded show such damage and the measure of damages would be the amount which was unlawfully taken from plaintiffs. Finally, we do not see how any prejudice resulted from the failure to specify that the money which plaintiff sought to recover was in the nature of "damages," or from the failure to allege that plaintiff had been "damaged," nor has appellant indicated in its very able presentation of the matter, that any injury had resulted to it, assuming that the contention in respect to the pleadings is true. Its argument is somewhat academic in character, and failing, by practical application to the case, to show prejudice or

injury. Error without prejudice does not afford appellant any relief in this court. It denied in its answer that it made any false statements to plaintiffs; denied that plaintiffs, relying upon any statements or misrepresentations it had made, paid to it the sum of $4,800, or any other sum, or otherwise, or at all. It introduced the same evidence and availed itself of the same objections which it might have urged whether the cause of action were technically one at law for damages or in equity for rescission. It is certain that no miscarriage of justice resulted from the irregularities complained of. (Const., art. VI, sec 4½.) We are of the opinion that the complaint states a cause of action against appellant, based upon fraud and deceit.

It is contended that the alleged representations were made concerning future acts only and could not, in contemplation of law, amount to a "fraud," as they could neither be false nor true when made. We do not read the record in that light. The statements were made as to the nature and terms of the trust which the bank had assumed with reference to moneys deposited with it, as and to what, under the *terms of its trust,* would be done with the moneys in the future. The terms of the trust were misrepresented, and also the duties of the bank in respect thereto. "A mere promise to perform an act in the future is not, in a legal sense, a representation, nor does a failure to perform such promise convert it into a false representation; but if the promise is accompanied with statements of existing facts which show the ability of the promisor to perform his promise, and without which the promise would not be accepted or acted upon, such statements are denominated representations, and if falsely made are grounds of avoiding the contract, though the thing promised to be done lies wholly in the future." (*Russ* v. *Muscupiabe,* 120 Cal. 521, 529 [65 Am. St. Rep. 186, 52 Pac. 995].)

As to the affirmative defenses of estoppel and ratification, the court found that the facts alleged in the answer in connection therewith were not true and those findings are not attacked. Furthermore, these defenses are urged solely against a cause of action based upon rescission. As we have indicated, the judgment is not predicated upon a rescission, but upon fraud and deceit upon the part of the bank,

whereby plaintiffs were induced to invest $4,800 and lost the entire amount.

It is next contended that the evidence is insufficient to support the findings on the question of misrepresentations. The record discloses that they follow almost *verbatim* the testimony of the plaintiffs. It can scarcely be urged, with any degree of seriousness, that these findings lack support. Respondent argues that the testimony of said witnesses is very improbable. He also points out that the bank officials denied the conversations mentioned. It is a waste of time to attack findings under such circumstances. If there is any substantial evidence to support the findings, further inquiry on our part is foreclosed. The argument made by appellant might well be advanced before the trial court, as it is based upon the weight and effect of the testimony, and the credibility of the witnesses—matters with which we have no concern.

It is contended that the bank did not profit from the transaction in question, and hence the representations were not actionable. The question of a profit is immaterial. It is not essential to actionable fraud that the guilty party should derive any benefit from his misrepresentation or concealment. (26 C. J. 1180.) Liability is predicated upon the fact that the plaintiff has been misled to his prejudice, and not that defendant has profited by his wrong.

Appellant takes the position that "if anyone is to be held liable for the misrepresentations by Mr. Meeker and Mr. Dutton (President and Vice-president, respectively, of the bank), it must be them individually and not the Bank." It is urged that the said officers, in making the representations complained of, exceeded their authority, and that the bank had no interest in the project except to act as trustee. This objection was not raised when plaintiffs testified to said representations, and evidence upon the question went in without any suggestion or intimation that appellant would take the position which it now assumes.

It is an elemental rule of appellate practice that where evidence is introduced at the trial of a cause without objection, an objection to the same cannot be raised upon appeal. We are of the opinion, however, that appellant did not play the passive role portrayed by its counsel. "As a corporation can only speak or act through its agent, there

is stronger reason for holding it answerable for the acts and representations of the agent done within the ostensible scope of his authority and while transacting the business of the principal, than applies when the principal is a natural person. A corporation is liable for the fraud and deceit of its officers and agents, acting in the apparent course of their employment, although it did not authorize or know of the fraud or deceit, and although it may have been committed by the officer or agent for his own benefit.'' (Fletcher, Cyc. Corp., vol. 5, sec. 3346.) ''In such cases the doctrine of *ultra vires* has no application, for it would be a travesty on justice and common honesty to permit a corporation, whether private or *quasi* public, to participate in a fraud and to benefit therefrom and then escape liability on the ground that the act was not that of the corporation itself, but its officers who were in control thereof.'' (5 Thompson on Corporations, 2d ed., sec. 5474.)

It is urged that the third amended complaint introduced a new cause of action. We take the view that the amended complaint was simply an elaboration of allegations in the second amended complaint. An additional misrepresentation was included, but this was in connection with the same cause of action, to wit, fraud and deceit.

Other objections are raised by appellant, but we have carefully examined them and are satisfied that they are without merit.

The judgment of the trial court is fully justified by the record before us, and, accordingly, it is affirmed.

Hart, J., and Finch, P. J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on February 7, 1929, and a petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 7, 1929.

All the Justices concurred.