JORGEN A. BURKE AND ANOTHER v. FRED JOHNSON.[1]

February 15, 1946.

No. 34,114.

[1]Reported in 21 N. W. (2d) 805.

*Drake & Drake,* for appellant.
*Carl F. Granrud* and *Arthur C. Wangaard,* for respondents.

YOUNGDAHL, JUSTICE.

In an action for damages based on fraud and misrepresentation in connection with the sale of a house and acre of ground in Crystal Village, Hennepin county, plaintiffs recovered a verdict for $700. Defendant appeals from an order denying his alternative motion for judgment or a new trial.

The several assignments of error may be grouped conveniently into three main questions.

(1) Is the evidence sufficient to justify the verdict as to the claim of fraud?

(2) Did plaintiffs have the right to affirm the contract and sue for damages?

(3) Are plaintiffs barred from recovery because of the acceptance of favors and the modification of the contract after the discovery of the fraud?

Plaintiffs purchased the property under a contract for deed on April 10, 1943. They inspected the premises twice before the contract was signed and observed that the basement floor was wet and that water stood around the floor drain. The premises were first inspected on April 4, 1943. On April 10, 1943, plaintiffs again made an inspection and found the water condition substantially the same as before. There was a "puddle of water under the basement stairs," and a big rug on the basement floor was "soaking

wet." The evidence in behalf of plaintiffs indicates that defendant represented that the basement always had been dry; that the water condition was due to the fact that the cesspool was plugged up; that he was having the obstruction removed and that as soon as the cesspool was repaired and the frost left the ground the basement would be dry. In reliance upon these representations, plaintiffs purchased the property. Shortly after entering into possession thereof, in the first week of May 1943, the water condition was worse, even though the cesspool had been fixed and the frost was out of the ground. From that time on, every time there was a rain the basement floor was covered with water varying in depth from one inch to two feet. The water in the basement was the result of a "waterlogged condition of the general subsoil" in the vicinity. One of the witnesses for plaintiffs, a contractor, described the condition, a possible remedy, and its cost, as follows:

"Witness: That the building might possibly be raised several feet. I may state first that there is a waterlogged condition of the general subsoil there and no doubt unless the house was raised up considerably there you would have more or less seepage in wet weather because of a general sump condition. That area there is lower than the surrounding area, and water just generally seeps through the soil to the lower portions.

"By Mr. Wangaard:

"Q. What would have to be done in order to raise the building?

"A. It would require the equipment of a house mover to raise the building. You would have to jack it up and brace it properly, it is quite an engineering feat.

\* \* \* \* \*

"Q. In your opinion might that remedy be satisfactory?

"A. Well, it might. I wouldn't want to guarantee it, but I would think it might remedy the situation.

"Q. Have you an opinion as to what the cost would be to do that?

"A. I have a rough idea that it would cost around a thousand dollars to do it.

"Q. That is all."

There is the usual conflict in the testimony in this case. Defendant denied that he represented that the basement had been dry or that the water was caused by the clogging of the cesspool. He testified that he fully informed plaintiffs of the water condition and that they purchased the premises with full knowledge of the facts.

However, the jury decided otherwise, and we are required here to take that view of the evidence most favorable to plaintiffs. So considered, we are of the opinion that a fact issue was presented whether defendant misrepresented the facts to plaintiffs as to what caused the water to accumulate in the basement. Humphrey v. Sievers, 137 Minn. 373, 163 N. W. 737; Forsberg v. Baker, 211 Minn. 59, 300 N. W. 371.

■ We come, then, to the second contention of defendant. He asserts that, in any event, plaintiffs discovered the facts upon which the fraud is based while the contract for sale was wholly executory, or at least while it was partly executory and partly executed, so as to bring the case within the rule of Defiel v. Rosenberg, 144 Minn. 166, 174 N. W. 838.

The facts in the instant case are clearly distinguishable from those in the Defiel case. That case involved a long-term lease, and as we pointed out in Kohanik v. Beckman, 212 Minn. 11, 13, 2 N. W. (2d) 125, 126, the court in the Defiel case stated that the part performance therein was but a "trifle of the whole."

In the Kohanik case we limited the Defiel case to the facts therein involved and reaffirmed the rule stated in Humphrey v. Sievers, 137 Minn. 373, 163 N. W. 737, *supra,* and other cases, that, under an executory contract where substantial part performance has occurred before discovery of the fraud, the performance of the contract does not ratify the fraud by which it was obtained and does not preclude an action for damages.

In the case at bar, plaintiffs purchased the property for $4,900. Under the terms of the contract, they were required to pay $800 in cash, assume and agree to pay a mortgage in the sum of $3,400,

and pay a deferred balance of $700 at the rate of $10 per month beginning May 15, 1943. Plaintiffs paid only $550 in cash and executed a note for $250, payable April 24, 1943. This note was paid shortly after plaintiffs went into possession the first week in May 1943. Thus, the fraud was not discovered until plaintiffs had paid $800 in cash, assumed and agreed to pay a $3,400 mortgage, and had entered into possession of the premises. This, we believe, constituted sufficient part performance of the executory contract to bring this case within the rule of Kohanik v. Beckman, 212 Minn. 11, 2 N. W. (2d) 125; Humphrey v. Sievers, 137 Minn. 373, 163 N. W. 737, *supra,* and similar cases. Plaintiffs were therefore justified in affirming and completing the contract and suing for damages for the fraud.

■ The contention of defendant that plaintiffs waived their right to sue for damages by accepting favors and because of modification of the contract cannot be sustained. After plaintiffs took possession of the property, defendant purchased and installed a septic tank and an electric pump. The acceptance thereof by plaintiffs does not constitute acceptance of favors or a modification of the contract within the meaning of the rule approved in Humphrey v. Sievers, 137 Minn. 376, 163 N. W. 738, *supra,* that the party deceived, after discovery of the fraud, "must stand towards the other party at arm's length, must comply with the terms of the contract on his part, must not ask favors of the other party or offer to perform the contract on conditions which he has no right to exact, and must not make any new agreement or engagement respecting it. If he does so he waives the fraud." There was no waiver of the fraud in this case, because plaintiffs accepted only that to which they were entitled under the contract as made before the discovery of the fraud.

Affirmed.