**AUTOMOBILE INS. CO. OF HARTFORD, CONN., v. BARNES-MANLEY WET WASH LAUNDRY CO. et al.**

No. 3521.

Circuit Court of Appeals, Tenth Circuit.

April 30, 1948.

Rehearing Denied June 29, 1948.

W. E. Green and Robert J. Woolsey, both of Tulsa, Okl. (J. C. Farmer, of Tulsa, Okl., on the brief), for appellant.

Robert S. Trippet, of Tulsa, Okl. (Rodolf, Pinson & Lupardus, M. C. Rodolf, and Paul Pinson, all of Tulsa, Okl., on the brief), for appellees.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

PHILLIPS, Circuit Judge.

Barnes-Manley Wet Wash Laundry Company[1] is an Oklahoma corporation. It is engaged in the laundry and dry cleaning business. On January 1, 1931, The Automobile Insurance Company of Hartford, Connecticut,[2] issued to the Laundry Company its Bailees' Customer policy of insurance by which it insured the Laundry Company "for account of whom it may concern" against loss or damage, with certain exceptions not here material, of goods and articles accepted by the Laundry Company from its customers to be laundered or dry cleaned, while in the laundry premises, or while being transported to and from the Laundry Company's customers.

The policy was a continuing contract, subject, however, to cancellation by either party by the giving of 15 days' notice in writing. The premium rate was based on a percentage of each $100 of gross receipts from laundry operations and from dry-cleaning operations. The rate was changed from time to time by endorsement on the policy. On July 20, 1945, it was fixed at 61 cents on each $100 gross receipts from laundry operations and 95 cents on each $100 gross receipts from dry-cleaning operations. The policy in part read as follows:

"1. Loss, if any, at the option of this Company to be adjusted with and paid to the assured for account of whom it may concern, or adjusted with and paid direct to its customers."

"8. Records and Monthly Reports.—The Assured agrees to maintain and keep an accurate record of its business, and on or before the 10th day of each month to report to this Company the total amount of its gross receipts (either collected or uncollected) from its business during the preceding month or such time as is within the policy period."

"10. The Company through its authorized representative and at all reasonable times shall have access to the assured's books and records for the purpose of determining the actual premium due, and any evasion or attempted evasion by the assured in the matter of rendering such reports hereinbefore required, or payment of premium hereunder, shall be an absolute defense to any suit or action brought under this policy."

In December, 1945, the Laundry Company's plant was destroyed by fire. The Laundry Company gave notice to the Insurance Company of such loss and demanded indemnification and payment for the loss of customers' property in the possession of the Laundry Company for laundering and dry cleaning. The loss of customers' property amounted to $211,410.56, of which $209,103.56 was paid by the Insurance Company.

During the period from the issuance of the policy to the date of the fire, the Laundry Company intentionally and knowingly, with intent to defraud and deceive the Insurance Company, from month to month, reported its gross receipts from dry cleaning and laundry in amounts substantially less than the actual amounts received. During that period, the Laundry Company reported its gross receipts at $1,823,914, when its actual gross receipts for the period were $4,097,138. The Laundry Company paid premiums aggregating $10,100.27. The premiums which it should have paid were $22,359.87. From actuarial experience, the Insurance Company, on the basis of the monthly reports of gross receipts, was able to determine an approximation of the amount of the risk, from month to month, under the policy.

When the paid claims reached $40,000, the Insurance Company became suspicious,

---

[1] Hereinafter called the Laundry Company.

[2] Hereinafter called the Insurance Company.

because, on the basis of the gross receipts reported, the loss should not have greatly exceeded $40,000. When the paid claims reached $90,000, the Insurance Company caused an audit to be made, which disclosed that the Laundry Company had reported only approximately 43 per cent of its gross business and paid only approximately 43 per cent of the premiums due under the terms of the policy.

The Insurance Company brought this action against the Laundry Company. In its original complaint, it set up two causes of action. In its first cause of action, it pleaded the facts hereinbefore stated, sought rescission of the insurance contract, and recovery from the Laundry Company of the amounts paid out by the Insurance Company to customers. In its second cause of action, it sought, in the alternative, the recovery of the balance of the unpaid premiums.

The Laundry Company filed an answer which contained a motion to dismiss the first cause of action.

After a hearing on the motion to dismiss, the trial court sent a letter to counsel in which it stated that the purpose of the monthly reports of gross business was to determine the premium; that the effect of the alleged misconduct of the Laundry Company was a failure to pay the full amount of the premiums earned on the policy and that the policy was not subject to cancellation for nonpayment of premiums. It stated, however, that it would reserve its ruling on the motion until the Insurance Company's evidence had been introduced. Thereupon, the Insurance Company filed an amended complaint containing three causes of action. In the first cause of action, it sought rescission and recovery of the amounts paid out under the policy. In the second cause of action, it alleged the facts above stated and further alleged that the Laundry Company charged each customer a 1 per cent service charge to cover insurance; that, as a result of the fraudulent reports of gross receipts made by the Laundry Company, the Insurance Company assumed a risk in excess of $200,000, and was compelled to pay the total loss incurred by customers of the Laundry Company, and that it was entitled to recover from the Laundry Company approximately 57 per cent of the amounts paid to customers by the Insurance Company under the policy. In the third cause of action, it sought, in the alternative, the recovery of the unpaid premiums.

The audit was filed in the trial court and the Laundry Company admitted its correctness.

The issue of fraud was submitted to the jury by a special interrogatory, and the jury found that the Laundry Company, during the period the policy was in force, intentionally and knowingly reported its gross receipts in amounts less than they actually were, with intent to defraud and deceive the Insurance Company.

The trial court held that the measure of damages for the fraud was the balance of the premiums due, and awarded the Insurance Company judgment on its third cause of action for the amount of the unpaid premiums, less an amount expended by the Laundry Company to facilitate the adjustment of claims asserted in the counterclaim of the Laundry Company.

The Insurance Company has appealed.

At the hearing, the Insurance Company offered evidence which established these facts: In the late Twenties, the laundry and dry-cleaning industry advised insurance companies that the industry needed a new type of policy that would provide unlimited coverage for loss of customers' property. Prior to the issuance of the policy in suit, an agent of the Insurance Company explained to an agent of the Laundry Company that the insurance companies had obtained actuarial information with respect to customers' goods in laundries; that from such information and monthly reports of gross receipts by laundries, an insurance company could determine, with a fair degree of accuracy, the total amount of risk from month to month under a policy; that if the Insurance Company were furnished with monthly reports of the gross receipts by the Laundry Company, it could make a fairly accurate estimate of the value of customers' goods in the plant of the Laundry Company and the amount of risk assumed under the policy from month to month, and that by watching the reports

of gross receipts from month to month, the Insurance Company could safely issue an unlimited policy to the Laundry Company. The Insurance Company had fixed the maximum amount of liability which it was willing to cover on property of customers in the plant of the Laundry Company at $65,000, to be arrived at from the monthly reports of gross receipts. Thus, it will be seen that the monthly reports of gross business serve two purposes: (1) A basis for the computation of premiums, and (2) a basis for an approximation by the Insurance Company of the amount of the risk from month to month.

The Insurance Company offered the deposition of Mr. Welk. He was the Chief Underwriter of the Inland Marine Department of the Aetna Life Insurance Company, of which the Insurance Company is an affiliate. Mr. Welk, in his deposition, testified that he was acquainted with the insurance risk here involved; that the maximum risk which the Insurance Company would have carried on goods in the Laundry Company's plant was $65,000; that had it known the risk exceeded $65,000, it would have placed reinsurance for the excess. The trial court held that this evidence was immaterial.

■ The policy was a third party beneficiary contract. Policies written "for account of whom it may concern" are valid.[3] The Laundry Company, in procuring the insurance, acted as the agent of the customers who were third party beneficiaries under the contract. The customers could ratify the act of the Laundry in procuring insurance, even after the loss.[4] Here, the customers ratified the act of the Laundry Company by asserting their claims of loss, which the Insurance Company recognized.

■ A warranty in a contract of insurance may either be affirmative or promissory. The former affirms the existence of a fact at the time the policy is entered into, and the latter requires that something be done or not done after the policy takes effect.[5] The provision of the policy by which the Laundry Company agreed to maintain and keep an accurate record of its business and on or before the tenth day of each month report to the Insurance Company the total amount of its gross receipts from business during the preceding month was a promissory warranty. That promissory warranty the Laundry Company breached, but it afforded no ground for the cancellation of the policy because the Insurance Company affirmed the contract by continuing to pay loss claims after knowledge of the fraud.[6]

The promissor under a third party beneficiary contract may assert as against the third party the equitable defenses of fraud, mistake, or failure of consideration against the third party beneficiary.[7] It may be that the Insurance Company could have asserted the fraud as a defense against the claims of third parties which had not been paid when the fraud was discovered.

■ While it is held in some jurisdictions that where a contract induced by fraud is still wholly executory on both sides at the time the fraud is discovered, the defrauded party may not affirm the contract and recover damages for the fraud and deceit, there would seem to be no logical reason for the application of that rule, where the basis of the action is not fraud which was an inducement to the contract, but fraudulent breach of a promissory warranty.[8] Where, however, the contract has been partially executed, the great weight

---

[3] Hagan v. Scottish Ins. Co., 186 U. S. 423, 426, 22 S.Ct. 862, 46 L.Ed. 1229; Palmetto Fire Ins. Co. v. Beha, D.C.N.Y., 13 F.2d 500, 510.

[4] Marqusee v. Hartford Fire Ins. Co., 2 Cir., 198 F. 475, 478, 42 L.R.A.,N.S., 1025; Lewis v. Home Ins. Co., 199 App. Div. 556, 192 N.Y.S. 170, 175; Stillwell v. Staples, 19 N.Y. 401, 406.

[5] Orient Ins. Co. v. Van Zandt-Bruce Drug Co., 50 Okl. 558, 151 P. 323, 324; Zolintakis v. Equitable Life Assur. Co., 10 Cir., 97 F.2d 583, 586.

[6] 9 Amer.Jur. p. 389, § 46; Farmers' State Bank v. Harrington, 98 Okl. 293, 225 P. 705, 707.

[7] Williston on Contracts, Rev.Ed., Vol 2, § 394; Green v. Turner, C.C., 80 F. 41, 43, affirmed 7 Cir., 86 F. 837, 838, 839; Tuttle v. Jockmus, 111 Conn. 269, 149 A. 785, 789.

[8] Williston on Contracts, Rev.Ed., Vol. 5, § 1524, p. 4267.

of authority supports the rule that the defrauded person may affirm and perform the contract and sue for and recover the damages suffered by reason of the fraud and deceit, absent an intention on his part to waive the fraud.[9] Here, there had been a substantial performance of the contract by the Insurance Company when it first learned facts which caused it to suspect fraud and it had paid out approximately $90,000 in claims before it learned of the fraud.

It is not essential to actionable fraud that the guilty party shall have received any benefit from his misrepresentation or concealment.[10]

23 O.S.1941 § 21 provides that the measure of damages for the breach of an obligation arising from contract is the amount which will compensate the aggrieved party for all of the detriment approximately caused by the breach, or which in the ordinary course of things would be likely to result from the breach.

23 O.S.1941 § 61 provides that the measure of damages for the breach of an obligation not arising from contract is the amount which will compensate for all detriment approximately caused thereby, whether it could have been anticipated or not.

76 O.S.1941 § 2 provides that "one who wilfully deceives another, with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers."

The judgment for the unpaid premiums in nowise compensated the Insurance Company for the fraud. The Laundry Company would have owed the Insurance Company the unpaid balance of the premiums had there been no fraud.

■ Here, the Insurance Company, through the fraud and deceit of the Laundry Company, was induced to assume and carry a risk which it did not intend or contemplate and which it would not have assumed and carried had true reports of gross receipts been made by the Laundry Company. We are not concerned with the question of whether testimony was admissible to the effect that the Insurance Company would have reinsured the estimated risk when it rose above $65,000. It is a well-known practice of insurance companies to fix a maximum limit on the risk they will carry in a particular location. Here, the false and fraudulent reports did not go to the character of the risk, but they went to the amount of the risk in the particular location. The undisputed facts show that the Insurance Company had fixed

[9] Gilchrist v. Gensler, 161 Minn. 527, 201 N.W. 918; Schmitt v. Ornes Esswein & Co., 149 Minn. 370, 183 N.W. 840, 842; Dawson v. Thuet Bros., 147 Minn. 429, 180 N.W. 534, 535; Forsberg v. Baker, 211 Minn. 59, 300 N.W. 371, 372; Burke v. Johnson, 221 Minn. 274, 21 N.W.2d 805, 806; Geiger v. Cardwell, 99 Kan. 559, 163 P. 613, 614; Geiger v. Cardwell, 100 Kan. 65, 163 P. 613, 614; Bushey v. Coffman, 109 Kan. 652, 201 P. 1103, 1105; McCabe v. Kelleher, 90 Or. 45, 175 P. 608, 610; Weckert v. Wentworth & Irwin, 129 Or. 342, 277 P. 815, 818; Koch v. Rhodes, 57 Mont. 447, 188 P. 933, 937; Kirby v. Young, 145 Ark. 507, 224 S.W. 970, 973, 228 S.W. 53; 422 W. 15th St., Inc., v. Johnson's Estate, 258 App.Div. 227, 16 N.Y.S.2d 283, 284; Miller v. Central Trust & Savings Co., 285 Pa. 472, 132 A. 579, 583; Multnomah County v. Standard American Dredging Co., 92 Or. 261, 180 P. 508, 510; Witherspoon Oil Co. v. Randolph, Tex.Com.App., 298 S.W. 520, 521; Peck v. Brewer, 48 Ill. 54, 60, 62, 63; Grand Trunk Western R. Co. v. H. W. Nelson

Co., 6 Cir., 116 F.2d 823, 833; Williston on Contracts, Rev.Ed., Vol. 5, § 1524, p. 4267.

The only adjudicated case we have found in Oklahoma is Smith v. Reinauer, 178 Okl. 4, 61 P.2d 1039, which supports the rule above stated.

[10] Anglo California Nat. Bank v. Lazard, 9 Cir., 106 F.2d 693, 703; Blakeslee v. Wallace, 6 Cir., 45 F.2d 347, 352; Von Schrader v. Milton, 96 Cal.App. 192, 273 P. 1074, 1078; King v. Shawver, Tex.Civ.App., 30 S.W.2d 930, 932; Horton v. Tyree, 102 W.Va. 475, 135 S.E. 597, 599, 600; James-Dickinson Co. v. Harry, 273 U.S. 119, 123, 47 S.Ct. 408, 71 L.Ed. 569; Hindman v. First Nat. Bank, 6 Cir., 112 F. 931, 945; Endsley v. Johns, 120 Ill. 469, 12 N.E. 247, 250, 60 Am.Rep. 572; E. G. Rall Grain Co. v. Missouri Pac. Ry. Co., 94 Kan. 446, 146 P. 1180, 1182, L.R.A.1916C, 429; Kuelling v. Roderick Lean Mfg. Co., 183 N.Y. 78, 75 N.E. 1098, 1100, 2 L.R.A., N.S., 303, 111 Am.St.Rep. 691, 5 Ann. Cas. 124.

a top estimated risk of $65,000. That was the extent of the estimated risk it was willing to assume and carry. Through the fraud and deceit of the Laundry Company, it was induced to carry a risk to the customers which aggregated $211,410.56. If the reports of gross receipts had been true, the liability of the Insurance Company would have been approximately 43 per cent of $211,410.56. We think it must follow that the damage which it sustained as the result of the fraud and deceit of the Laundry Company was 57 per cent of $211,410.56.

The second cause of action of the amended complaint alleged that the Laundry Company charged and collected from each customer 1 per cent of the charge for service to cover insurance, and that the Laundry Company, in contracting for the insurance, acted as trustee for its customers. There was no express denial of those allegations and it may be doubted that the general denial in the Laundry Company's answer of "each material allegation" in the second cause of action was sufficient to raise an issue with respect to the alleged charge for insurance.[11] Since the case is to be remanded, and it should be a simple matter to determine the issue by proof, we deem it unnecesssary to pass on the sufficiency of the answer. If the Laundry Company did collect an insurance charge from its customers, it was obligated to purchase insurance coverage for all its customers. It did take out a policy which provided complete coverage for its customers but, thereafter, with intent to defraud and deceive the Insurance Company, it grossly understated the amount of its gross business in its reports to the Insurance Company and paid premiums on the basis of such reports. Through its fraud, the Laundry Company induced the Insurance Company to assume and carry a risk greatly in excess of the risk which the Insurance Company contemplated and believed it was carrying and which it was willing to carry. If the Laundry Company collected a charge from its customers for insurance, it had a primary obligation to protect its customers against loss. Through its fraud, it induced the Insurance Company to continue to carry that obligation and the Insurance Company, to the extent of 57 per cent of the amount paid out under the policy for loss of customers, discharged the obligation of the Laundry Company and would be entitled to restitution for that amount from the Laundry Company.

■■ The Laundry Company has lodged a motion in this court to dismiss the appeal on the ground that the three causes of action pleaded in the amended complaint are inconsistent and that, having recovered on the third cause of action as to which no error was assigned, the Insurance Company cannot prosecute the appeal for the sole purpose of determining whether it should have recovered on another inconsistent cause of action. Rules 8(a) (3) and 8(e) (2) of the Rules of Civil Procedure authorized the Insurance Company to state as many separate claims as it has, regardless of consistency, and to seek relief in the alternative. The Insurance Company did recover on the third cause of action but that cause was pleaded in the alternative and the Insurance Company insisted throughout that it was entitled to recover a larger amount on either the first or second causes of action. The notice of appeal was from the entire judgment and it brought the judgment as a whole here for review. While it is the general rule that a party cannot appeal from a judgment in his favor, the rule is not absolute, and where a judgment gives the successful party only part of that which he seeks and denies him the balance, with the result that injustice has been done him, he may appeal from the entire judgment.[12]

■ Moreover, the right to plead inconsistent causes of action and to seek relief

[11] Federal Rules of Civil Procedure, rule 8(a), 28 U.S.C.A. following section 723c; Schreffler v. Bowles, 10 Cir., 153 F.2d 1, 3.

[12] United States v. Dashiel, 70 U.S. 688, 701, 18 L.Ed. 268; Scott v. Partview Realty & Improvement Co., 241 Mo. 112, 145 S.W. 48, 50; Zigler v. Erler Corporation, 102 Fla. 981, 136 So. 718, 719; Houchin Sales Co. v. Angert, 8 Cir., 11 F.2d 115, 119; Shaheen v. Hershfield, 247 Mass. 543, 142 N.E. 761, 762; Blanchard v. Neill, 83 N.J.Eq. 446, 91 A. 811.

in the alternative given by the Rules of Civil Procedure is not limited to the trial in the District Courts. Such right with respect to controversial questions of law obtains until final disposition on appeal. The motion is without merit and is denied.

The judgment is reversed and the cause remanded for further proceedings in accordance with the views herein expressed.

HUXMAN, Circuit Judge (dissenting).

I think the judgment of the trial court should be affirmed. In the ultimate, the only question presented is the measure of damages for ascertaining the loss of appellant resulting from the established fraud of the Laundry Company. There is nothing new, novel or difficult in this problem. While the type of insurance involved in this case is new and while there are no cases directly in point dealing with the measure of damages flowing from the breach of such contracts or from fraud in such transactions, the gauge to be applied is the same as in other cases.

The general rule in cases of fraud is that the defendant is liable for damages that are the natural and proximate result of his wrong-doing. The damages which are the proximate result of the wrong are those which must be presumed to have been within the wrong-doer's contemplation at the time he committed the fraud. In other words, they are such as he knew or is presumed to have known would result from his wrongful conduct.[1]

Appellant offered the deposition of Welk, its chief underwriter, who testified that his company would have carried a maximum risk on this business limited to $65,-000.00, and that it would have either reinsured anything above that or canceled the policy if the risk exceeded such amount. This testimony was properly rejected by the court. What appellant would have done is incompetent to establish the measure of damage. If it were established or testimony had been offered to prove that it was the common practice of insurance companies to reinsure a portion of such a risk as was assumed under this policy and the

amount thereof which ordinarily would have been reinsured and that the Laundry knew of such practice, we would have an entirely different question. It is sufficient to say that there is not a scintilla of evidence tending to establish such a state of facts nor was any evidence offered to this effect.

Under the undisputed evidence in this case, the only damage which was established resulting from the wrong of the Laundry was the loss of premiums and the court correctly entered judgment for such amount.

---

[1] See 37 C.J.S., Fraud, Section 141; Kornblau v. McDermant, 90 Conn. 624, 98 A. 587; Smith v. Bolles, 132 U.S. 125, 10 S.Ct. 39, 33 L.Ed. 279; Lowrie v. Castle, 225 Mass. 37, 113 N.E. 206.